451 So.2d 222 (1984)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
BORDEN, INC.
No. 53961.
Supreme Court of Mississippi.
June 6, 1984.
*223 Leo T. Aragon, Jackson, for appellant.
Beth L. Orlansky, Harold D. Miller, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellee.
EN BANC.
PRATHER, Justice, for the Court:
This is an employment compensation case. The claimant, Jimmy Kelly, was awarded unemployment benefits after a hearing before Mississippi Employment Security Commission Referee. Referee G.A. Gilly's decision was adopted and affirmed by the Mississippi Employment Security Commission Board of Review. The claimant's employer, Borden, Inc., appealed the findings of the Board of Review to the Hinds County Circuit Court which reversed the Board's finding and held that the claimant was not entitled to unemployment benefits since he was discharged for misconduct connected with his employment. The claimant and the Mississippi Employment Security Commission appeal to this Court and assign as error that:
The circuit court erred in holding that Borden's policy of discharging employees who have had their wages garnished four or more times, is a discharge for misconduct connected with his work as contemplated by Mississippi Code Annotated section 71-5-513(A)(2) (Supp. 1983).
We affirm.

I.
The facts of this case are undisputed. Claimant Jimmy Kelly was employed with Borden Inc. as a stacker in Borden's ice cream vault since June 2, 1977, and he was discharged on May 5, 1981. The reason for his discharge was service of seven writs of garnishment on Borden for the garnishment of Kelly's wages resulting from unpaid debts. The seven garnishments served on Borden were issued within two years by four different creditors. These debts and garnishments are summarized as follows:
Item 1) Bush Jewelers: Date of garnishment, March 12, 1979, amount, $500. Given oral and written warning. Order from Judge Martin, acknowledged March 14, 1979.
Item 2) Bush Jewelers: Date of garnishment, June 4, 1979, amount $500. Same debt and oral and written notice given. Acknowledgement to Judge Martin, June 8, 1979.
Item 3) Credit Center of Pearl: Date of garnishment October 12, 1979, amount $208. Judge Moore, garnishment acknowledged October 23, 1979.
Item 4) Shaws Clothing: December 17, 1980, amount $285.91, Judge Bass, acknowledged January 7, 1981.
Item 5) Credit Center of Pearl: Date of garnishment February 27, 1980, amount of indebtedness, $208, Judge Moore, acknowledgement dated March 1, 1980.
Item 6) Termplan, Inc.: Date of garnishment March 20, 1981, amount $17,155. Judge Patterson, involved, and garnishment acknowledged March 24, 1981.
Item 7) Shaws Clothing: March 24, 1981, amount $285.91, Judge Bass involved, garnishment acknowledged April 3, 1981.
The Borden Company policy on which Kelly's discharge was premised states that:
A warning is required on the second indebtedness. Upon receipt of the third garnishment, the individual is once again warned both orally and in written form and advised the fourth garnishment may result in discharge. No action will be taken for more than one garnishment on *224 the same debt. Each incident will be documented.
Present at the hearing before Referee Gilley were two representatives of Borden's Inc. Although claimant had been notified of the hearing, he was not present before the referee, nor was he represented. The hearing resulted in the affirmance of the claims examiner's decision to allow the benefits.

II.
Public policy with regard to the payment of unemployment benefits indicated by Mississippi Code Annotated section 71-5-3 (1972) expresses the legislative intent, stating that:
As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden, which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.
To accomplish this stated legislative intent, all covered employers within the state pay into the state employment fund under prescribed rules. Mississippi Code Annotated § 71-5-3 (1972), § 71-5-111 (1972), and §§ 71-5-351 to -355 (1983 Supp.); see Mississippi Employment Security Commission v. City of Columbus, 424 So.2d 553 (Miss. 1982). This employment fund is to take care of deserving employees who have lost their jobs through no misconduct and involuntary unemployment.
While Mississippi has no statute regarding discharge from employment or disqualification from unemployment benefits on account of wage garnishments, Federal Law at 15 U.S.C.A. section 1674 (1968) declares that:
(a) No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.
(b) Whoever willfully violates subsection (a) of this section shall be fined not more than $1,000, or imprisoned not more than one year, or both.
We emphasize that Borden's right to discharge its employees for excessive wage garnishments is not questioned, nor is the reasonableness of Borden's garnishment policy challenged. However, the public policy consideration in question here involves two important social concerns: the involuntary unemployment of the employee as well as the burden upon the employer.
For the employer as garnishee, he has to hire an attorney to appear and answer a suggestion of garnishment (Mississippi Code Annotated § 11-35-1 (1972), Mississippi Code Annotated § 11-35-25 (Supp. 1983), and Mississippi Code Annotated § 11-35-27 (Supp. 1983), ascertain the proportionate amount due an employee under garnishment and retain the non-exempt percentage of disposable earnings to satisfy the garnishment writ (Mississippi Code Annotated § 11-35-23 (1983 Supp.) together with all the necessary bookkeeping incident thereto. For failure to so answer, a garnishee subjects himself to personal judgment. Mississippi Code Annotated *225 § 11-35-31 (1972). All of this places additional financial burden on an employer who is contributing already to the state employment fund and subsidizing unemployment benefits under the act.

III.
The issue presented here is whether excessive garnishments constitute "misconduct connected with his work" as contemplated by Mississippi Code Annotated section 71-5-513(A)(2) (Supp. 1983).
Section 71-5-513(A)(2) provides that:
An individual shall be disqualified for benefits.
.....
(2) For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work.

.....
(Emphasis added).
This Court in Wheeler v. Arriola, M.D., 408 So.2d 1381 (Miss. 1982) defined "misconduct" as:
(C)onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.
(Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941).)
It is noted that this factual situation is extreme. There is no testimony about undue personal hardships such as excessive medical expense, work lay-offs, or uneffected losses that would explain large indebtednesses. On this record there is only the bare listing of the four creditors which include a jewelry store and a clothing store.
It is the view of this Court that seven garnishments from four different creditors of the employee with an announced and published plant policy against this conduct evidences "conduct evincing wanton disregard of the employer's interest" and a "disregard of standards of behavior which the employer has a right to expect." Wheeler, supra.
We hold excessive garnishments under a reasonable and constitutionally permissible garnishment policy does constitute "misconduct connected with his work" to preclude unemployment benefits.

IV.
It is the opinion of this Court that claimant Jimmy Kelly is not entitled to unemployment benefits since excessive garnishments upon his wages do constitute "misconduct" connected with his work under the statute in question. Therefore, the decision of the Circuit Court of Hinds County is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE and SULLIVAN, JJ., concur.
BOWLING, and ROBERTSON, JJ., not participating.