562 So.2d 115 (1990)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Halliburton Services
v.
Dennis R. (Ray) PHILLIPS.
No. 07-CC-59287.
Supreme Court of Mississippi.
May 23, 1990.
*116 Charles A. Adams, Jr., Bart N. Sisk, and Robert A. Bogdan, Kullman Inman Bee & Downing, New Orleans, Fred J. Lotterhos, Jr., Jackson, for appellants.
Len Melvin, Melvin & Melvin, Laurel, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
Halliburton's Services discharged Dennis Phillips, an employee of ten-plus years, for refusing an assignment to correct a potential blow-out on an Exxon oil drilling rig in the Gulf of Mexico, and the question is whether Phillips' refusal constitutes "misconduct" such that he may be denied benefits under the Mississippi Employment Security Act. Without contradiction, Phillips held an objectively reasonable belief that the job he was asked to do was substantially dangerous to life and limb, and for that reason, he declined it.
We hold that Phillips' actions did not constitute misconduct and that he is entitled to benefits under the Act. We affirm the judgment of the Circuit Court to that effect.

II.
On July 20, 1976, Dennis Ray Phillips entered into an employment contract with Halliburton Services, a division of Halliburton Company. Halliburton specializes in servicing oil well problems. Phillips established an exemplary employment record over the next ten years. In early 1987, *117 Phillips served Halliburton as a "fract operator." He was then 35 years old and working out of Laurel, Mississippi.
On January 29, 1987, an Exxon representative called Phillips about a potential blow-out on an off-shore well out from Houma, Louisiana. The well had 8,000 pounds of pressure on it and was leaking at the tabin hanger below the master valve above the ground. Early the next morning, the Halliburton dispatcher called Phillips in and instructed him to undertake the job, which was expected to require installing an oil well head isolation tool to pump sand through a pipe into the well in order to "kill" the well.
Phillips declined the assignment, without visiting the scene. Halliburton assigned another employee to the job, although after he arrived on the site another solution was chosen. On February 2, 1987, Halliburton fired Phillips.
Based on the information he had been given, Phillips described the circumstances presented to him and the job he was asked to do. "You can't visually inspect the tree [the well] and see how bad it has been leaking. You don't know what kind of corrosion has occurred inside that tree because you can't visually inspect the thing to see how bad it's leaking. You're just going on to it blindfolded knowing you've got a lot of tree damage and knowing that you're fixing to pump into a plug. That right there seems to me it's every potential in the world for a blow-out ... You're out there on the water, on a barge, you've got nowhere to go. It's every potential, it's every potential in the world of getting somebody killed."
When asked if he would consider the job dangerous, Halliburton's district manager, Jack Hilton, replied, "Yes, very much so." Former Halliburton employee Jerry Hill said it would have been dangerous to even get in the vicinity of the Exxon well to examine it. Retired Halliburton employee John R. Sterns testified that the job was quite dangerous and that, in his twenty years of service with the company, he had never seen one like it.
Halliburton's district engineer, Woody Whatley, said a leak at the flange on the tree about the ground would be "unusual" but that he had seen it "several" times. Whatley acknowledged that Phillips was a competent and experienced employee who had probably done as many as 500 jobs as a fract operator.
Following his discharge, Phillips was without work for a time and applied for benefits under the Mississippi Employment Security Act. On April 15, 1987, an MESC Referee held Phillips entitled to benefits. Halliburton presented the matter to the MESC Board of Review which reversed, holding that, on the uncontradicted facts, Phillips' refusal was "misconduct" connected with his work. Miss. Code Ann., § 71-5-513(A)(1)(b) (Supp. 1987). Phillips appealed and on March 23, 1988, the Circuit Court for the Second Judicial District of Jones County reversed, holding that Phillips is entitled to benefits.
MESC and Halliburton now appeal to this Court.

III.
Several general premises are not at issue and need be expressed. Halliburton is in the business of servicing oil wells and particularly of conducting blow-out/well kill operations, which as a matter of common sense are inherently dangerous. Nothing said here questions  or even addresses  Halliburton's right to insist that those who accept employment with it be willing to undertake these dangerous operations on pain of discharge. Cf. Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss. 1987) (considering status of "employment at will" in Mississippi); Shaw v. Burchfield, 481 So.2d 247, 253-255 (Miss. 1985) (same); but see Whirlpool Corp. v. Marshall, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980) (upholding OSHA regulation that employee may walk off an unreasonably dangerous job). Moreover, Phillips' complaint that the assignment he was given was contrary to company policy because he would have been required to use a competitor's pump and equipment is of no effect. Whether Halliburton had *118 such a policy is not the issue. Phillips was not one empowered to make or enforce this policy. Phillips' superiors had apparent authority to direct him to undertake this job, notwithstanding that a competitor's equipment be on the scene.
The question is whether on these facts Phillips was guilty of "misconduct" within the meaning of the Act. The Legislature has afforded no definition of misconduct, although quite apparently the statute imports an objective standard. The end of law is individual and hence societal adherence to external standards. It follows that questioned acts must be judged by like standards, even where expressed in language so open textured as "misconduct connected with his work." We have fleshed out the term in a series of cases beginning with Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss. 1982). See also, Miss. Employment Sec. Commission v. McGlothin, 556 So.2d 324 (Miss. 1990); Shannon Engineering and Construction v. Miss. Employment Sec. Commission, 549 So.2d 446 (Miss. 1989); Piggly Wiggly v. Miss. Employment Sec. Commission, 465 So.2d 1062 (Miss. 1985); Miss. Employment Sec. Commission v. Borden, Inc., 451 So.2d 222 (Miss. 1984). Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests. Something more than mere negligence must be shown, although repeated neglect of an employer's interests may rise to the dignity of misconduct. See Borden, 451 So.2d at 225.
Our misconduct cases set our context, and we must proceed on principle from them when we consider today's question: the consequence of an employee's refusal to expose him or herself to unreasonable danger or risk of harm. Again, an objective standard obtains. An employee does not surrender his right to regard his personal safety when he accepts employment, even with an employer such as Halliburton. A worker undertaking hazardous duty has a right to emerge from the employment a whole person, the same as a pencil pusher with an office job. An employer has no countervailing interest the law ought respect. From these premises it follows that an employee has the right to walk off the job without his conduct being regarded "misconduct" if a reasonably prudent person under the circumstances would believe the danger was so grave that there exists a real danger of death or serious physical injury, and if the employee has no reasonable alternative. See McLean v. Unemployment Compensation Bd. of Review, 383 A.2d 533, 537, 476 Pa. 617 (1978). Where at the time there exist such facts and circumstances, known to or reasonably available to the employer, facts and circumstances suggesting these conclusions to one similarly situated and reasonably competent and knowledgeable in the particular business, the employee's refusal of the assignment without more is not misconduct within § 71-5-513(A)(1)(b) Miss. Code Ann. (Supp. 1988).
Applied to today's facts, these standards preclude a finding of misconduct by MESC. Halliburton assigned Phillips a job all agree involved substantial danger to life and limb. Halliburton gave Phillips no option but to do what he reasonably considered extremely dangerous or, as it turned out, be fired. It is true there is evidence Phillips may have been a bit premature in his judgment and that he should have gone to Houma and inspected the site before finally refusing the job. At most Phillips was negligent. His failure here, in light of his extensive experience in the business plus his understanding of the details of the Exxon job, does not sink his savvy to the misconduct level.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.J.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.