**7/1/97**

**IN THE COURT OF APPEALS**

**OF THE**

**STATE OF MISSISSIPPI**

**NO. 95-CC-00554 COA**

*STATE TAX COMMISSION OF MISSISSIPPI*

*APPELLANT*

*v.*

*ANTHONY VIOLA*

*APPELLEE*

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. FRANK A. RUSSELL

COURT FROM WHICH APPEALED: TISHOMINGO COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

GARY STRINGER, BOBBY LONG

ATTORNEY FOR APPELLEE:

JOHN A. HATCHER

NATURE OF THE CASE: CIVIL: TERMINATION STATE EMPLOYEE

TRIAL COURT DISPOSITION: TERMINATION OVERTURNED

MOTION FOR REHEARING FILED:7/28/97

CERTIORARI FILED: 9/23/97

MANDATE ISSUED: 12/17/97

BEFORE SOUTHWICK, PJ., AND DIAZ AND KING, JJ.This case was argued orally before a panel of Fraiser, C.J. and Barber and Southwick, JJ. Due to the retirement of Chief Judge Fraiser and the death of Judge Barber prior to decision, the present panel was formed. The new panel listened to

a tape of the oral argument.

SOUTHWICK, PJ., FOR THE COURT:

The Circuit Court of Tishomingo County reversed a decision of the Employee Appeals Board (EAB). The Board had found that Anthony Viola was properly terminated by the State Tax Commission due to his failure to make timely deposits of funds collected by the vehicle weigh station where he worked. The Tax Commission appeals and alleges twelve errors in the circuit court judgment. The thrust of these allegations is that the court exceeded its limited power of appellate review and instead retried the underlying facts. We agree. We find that the EAB decision was in conformity with the applicable statutes and case law. Consequently, the circuit court judgment is reversed and the EAB decision reinstated.

FACTS

Anthony Viola was a supervisor at a highway weight scales location operated by the State Tax Commission. Just prior to the commencement of the proceedings that we now review, Viola had been the subject of disciplinary proceedings regarding his work at the scales in Corinth. Though those proceedings are not on appeal here, it appears the result was an agreed judgment in the Employee Appeals Board of January 28, 1991, whereby Viola was disciplined, but not terminated. He began work at the scales in Iuka, which was a temporary transfer authorized by the agreed judgment. On March 6, 1991, Viola was suspended with pay from his work at the Iuka scales. The charge was Viola's failure timely to deposit the collections from the scale. On March 14, a written reprimand was issued along with a recommendation that Viola be terminated.

The alleged offense fell under this section of the State Employee Handbook:

Acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees.

The notice of the precise charge against Viola was this:

Failure to make deposits of funds collected by you in a timely manner as required by General Order 87-05 (copy enclosed) requiring all state money be deposited within 24 hours. This also violates state law that requires all state monies be deposited in a timely manner. . . .

A pre-termination hearing was conducted on March 28 before Dr. Charles Marx, chairman of the Tax Commission. Viola was represented by counsel. Evidence was introduced of a sampling of deposits made by Viola from the scale. Out of the 90 deposit sample, 58 had been held more than four days. Another sample of 144 deposits that Viola made indicated 46 (32%) were at least five days late, and 70 (58%) were at least four days late. Testimony revealed that other sergeants in charge of making deposits were making them daily. After the hearing, Dr. Marx issued on April 2 a termination letter that was effective on April 5. Viola appealed to the Employee Appeal Board. A hearing officer conducted a hearing entered on December 12, 1991. He dismissed the appeal and denied all relief. The EAB itself then affirmed the hearing officer. That order was entered on October 21, 1992.

Viola's motion for reconsideration or partial reopening was denied, a point of some controversy in subsequent proceedings because of alleged new evidence that should have caused a rehearing.

Viola then took his complaints to the Circuit Court of Tishomingo County. The court on October 21, 1993 reversed the EAB decision. In a fifty page opinion that the court noted was largely an adoption of Viola's proposed findings of fact and conclusions of law, the court ordered Viola reinstated with back pay and benefits. The cause was remanded to the EAB for its determination of reasonable attorneys fees, costs that should be reimbursed Viola, and damages due for mental anguish and related injuries. Before the remand, the Tax Commission appealed to the supreme court. On May 25, 1994, the court refused to permit the interlocutory appeal. No review occurred beyond noting the fact that there was no final judgment.

With the supreme court appeal dismissed, the EAB entered an order on September 1, 1994, that no statute authorized attorneys fees and damages against the Tax Commission. It further held that no remedy under the federal statutes raised by Viola was permitted against a state or an agency such as the Tax Commission. However, Viola was awarded almost $7,000 for the cost of preparing an appellate transcript.

Viola gave the circuit court notice of the EAB decision. The court conducted an evidentiary hearing on the issues it had sent to the EAB. On May 10, 1995, the court found the EAB to be in violation of the court's remand order. The result was an award of attorneys fees, expert witness fees, and other costs totaling approximately $37,400, for the proceedings before the EAB. In addition, the court awarded $5,000 in attorneys fees for representation in the circuit court. No award for mental anguish or other claims was given.

The Tax Commission appealed to the supreme court, which deflected the case here.

DISCUSSION

We will discuss each of the Tax Commission's appellate issues in order. It is evident that the parties agree about little in this case, even to so basic a question as the standard of review. It is also evident that by adopting Viola's proposed findings and conclusions, the circuit court injected a panoply of alternative factual and legal issues into the case in support of its ruling. At times the forest is lost among the trees. The forest is that this is a state employee termination appeal. The trees that have sprung up, some not too firmly rooted, concern constitutional claims of disparate treatment, the Tax Commission's proper adoption of personnel rules, the impact of 42 U.S.C. 1983 & 1988, whether the EAB is part of the executive or judicial branch or somewhere in between, and a variety of other matters. It is not that such issues are per se improper in a personnel case; it is that in this case they serve more to sidetrack analysis than to aid it.

*1. Standard of review.*

The legislature left no question about the scope of review by a circuit court of a decision appealed from the EAB. The relevant statute is this:

The scope of review of the circuit court in such cases shall be limited to a review of the record made

before the employee appeals board or hearing officer to determine if the action of the employee appeals board is unlawful for the reason that it was:

(a) Not supported by any substantial evidence;

(b) Arbitrary or capricious; or

(c) In violation of some statutory or constitutional right of the employee.

Miss. Code Ann. 25-9-132 (2). Viola concedes only that this is one of the standards for review, but not the exclusive standard. He argues that the EAB is left undefined in state law, and that it could be considered a court because of its adjudicatory role. In that case, certain rules regarding review of court proceedings should be applied.

This is a prime example of some trees getting in the way of viewing the forest. Regardless of what label is placed on the EAB, there is a statute that defines the role of a circuit court in reviewing the EAB's decision. That review process and limitation on issues are the normal ones even were there no agency-specific statute for review of that agency's action. *See, e.g., Board of Law Enforcement v. Butler,* 672 So. 2d 1196, 1199 (Miss. 1996). In *Butler* the court specifically found that the trial court acted improperly when it conducted a hearing and took additional evidence. *Butler,* 672 So. 2d at 1199-1200.

Viola relies on a supreme court decision addressing appeals from the Mississippi Board of Bar Admissions. *Watkins v. Mississippi Bd. of Bar Admissions*, 659 So. 2d 561 (Miss. 1995). The court found that the record that the Board made on challenges raised by individuals who had failed the bar exam concerned test answers and other questions about the exam. The issue that the petitioner wished to raise was racial discrimination in various aspects of the grading process. *Watkins*, 659 So. 2d at 567-68. Since those questions were not something the Board process was designed to address, a limited trial de novo on the factual basis for the allegations was allowed in chancery court. Here, there is no comparable limitation to what could be presented before the EAB.

The supreme court has not wavered from limiting review of an agency decision to the record and the agency's findings; substitution of the trial court's judgment for that of the agency is prohibited. *Butler*, 672 So. 2d at 1199. We reject Viola's various arguments that attempt to make this case an exception to the otherwise applicable rules.

*2. Substantial evidence of failure to make timely deposits.*

The EAB decision is to be sustained on appeal if it is supported by "any substantial evidence." Miss. Code Ann. 25-9-132 (2) (1991). A list was introduced of 90 deposits that had been made by Viola, 58 of which had been held longer than four days. Another summary of 144 deposits, showed 70 of them were held more than four days. Viola's replacement as the sergeant at the Iuka scales, as well as a previous acting sergeant at the scales, testified that completing the paperwork required to make a deposit took no more than 30 or 45 minutes. Each of these other sergeants testified that their deposits were made every day. In addition, there was testimony that Viola would retain receipts despite going to the bank for other reasons. Under Mississippi Law Enforcement Rules and Regulations, Section XI (2), deposits were to be made within 24 hours of receipt.

Viola's defense was that paperwork required prior to making a deposit was causing the delay. His principal argument, however, is that these regulations were not properly presented to the Secretary of State for public comment, nor approved by the State Personnel Board. In his view there were no controlling regulations requiring a deposit within 24 hours. The Circuit Court agreed with this argument.

The state Administrative Procedures Act provides for public notice of proposed agency rules, a process initiated by filing the rules in the Secretary of State's office. The public may then comment. Miss. Code Ann. 25-43-7 (1991) and 25-43-9 (1991). It is acknowledged that the rule requiring an employee to make deposits within 24 hours was not adopted after such a procedure. However, the Administrative Procedure Act specifically says that rules governing "only the internal management of an agency and not affecting private rights or procedures available to the public" are not subject to the act. Miss. Code Ann. 25-43-3(f) (Supp. 1996). The rights of the general public were not affected by the rule in question. Instead, this rule concerned the management of personnel within the agency. The Administrative Procedure Act has no application. The very purpose of public notice and comment is so that the public that is affected by a rule will have an opportunity to participate in the rule's formation. This Administrative Procedure Act does not address the formation of rules governing the internal operation of an agency. Though there is no relevant case law on Mississippi's Administrative Procedure Act, similar interpretations have been made by other states and by federal courts as to their analogous statutes. *E.g., Curlott v. Campbell,* 598 F.2d 1175, 1180 n.8 (9th Cir. 1979) (APA inapplicable to management and personnel matters); *Mix v. University of New Orleans,* 609 So. 2d 958, 960 (La. App. 4th Cir. 1992), writ denied *Mix v. University of New Orleans,* 612 So. 2d 83 (La. 1993) (employee grievance procedure not an APA "rule"); *Conquest v. State Employee's Appeals Com'n.,* 565 N.E. 2d 1086, 1088 (Ind. App. 1991 ) (policy affecting employees' work hours was not a rule under APA).

The separate issue of whether the State Personnel Board must approve the rule is based on a provision of that Board's manual that states "any schedule of offenses and disciplinary actions added by the agency shall apply only to that agency and shall be submitted to the State Personnel Board for approval prior to implementation. . . ." The Tax Commission's general order holding that an employee was subject to dismissal for failure to comply with the requirement of timely deposits was not submitted to the Personnel Board.

The Personnel Board's policy manual requires that any change to the "schedule of offenses and disciplinary actions *below*" be approved by the Board (emphasis added). It is clear from the Board's manual that the "schedule of offenses" that is listed immediately below this statement is Group I, II, and III offenses as there defined. The Tax Commission did not change the schedule of offenses. Group III offense number 11 as defined in the manual and not changed by the Tax Commission is the offense that led to Viola's dismissal. That offense was named in the March 14, 1991, notice to Viola. He had committed acts "plainly related to job performance [that] are of such nature that to continue the employee in the assigned position could constitute negligence. . . ." That is a general description approved by the Personnel Board and left unchanged by the Tax Commission. It is then for the EAB and a court to determine whether the Commission's treating this particular employee's actions as a Group III offense was arbitrary or capricious. We address that question next.

There was no defect in the promulgation of the rules that Viola violated.

*3. Failure to make timely deposits is a proper Group III offense.*

The circuit court disagreed with the Employee Appeals Board that Viola had committed a Group III offense, and found that the EAB had been "arbitrary and capricious" in that determination. A Group III offense is the most serious category, and commission of one such offense may lead to dismissal. The State Tax Commission found, and EAB agreed, that failure promptly to deposit funds collected by an arm of the Tax Commission met the following definition of a Group III offense as set out by the State Personnel Board:

Acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees. . . .

The matter of timely deposits was considered sufficiently critical that the legislature required the deposit of all funds received by the Tax Commission on the same day as they were collected. Miss. Code Ann. 27-3-57 (1991). The Tax Commission, implementing the statutory mandate, then adopted a general order that required every employee to deposit all collections within 24 hours.

An issue arose during oral argument in this court regarding whether one statute's reference to the obligation of "state officials" to make timely deposits was inapplicable because Viola was a state "employee." Miss. Code Ann. 7-9-21 (1991). Some case law distinguishes "officers," not "officials," from other employees, but we need not get into such semantics. Regardless of the reference to "officials" in that one statute, the separate statute obligating the Tax Commission itself to make deposits of all funds within the day of collection indisputably can only be implemented through the actions of people, be they officials, officers or employees. Miss. Code Ann. 27-3-57 (1991). The Tax Commission, as do all agencies, has the authority to promulgate internal procedures on how its statutory obligations are to be met. The legislature no doubt would be astounded to learn that despite their mandate of deposits within 24 hours, the Tax Commission is not empowered to obligate their employees to carry out that mandate.

The trial court erred in finding the Tax Commission's decision arbitrary and capricious. One of the central duties, indeed, *the* core duty of the Tax Commission, is to collect taxes and make them available for state use. The timely deposit of vast sums of money that are collected in the various ways set out in the statute is of the essence of this agency's duty to the public. An employee's failure to perform his part in carrying out that core function is a serious offense.

The Tax Commission was not arbitrary nor capricious in finding this to be a Group III offense.

*4. Is counseling required before termination for a Group III offense?*

The trial court in its initial decision did not have the benefit of a recent supreme court case on the issue of counseling of an employee before termination. By the time of the final circuit court action, which followed an aborted appeal to the supreme court and a remand to the EAB, this new decision had been issued. *Young v. Mississippi State Tax Com'n.*, 635 So. 2d 869 (Miss. 1994). The supreme court pointed out that the State Personnel Board's policy was to require gradual increases in disciplinary action "wherever practical." *Young*, 635 So. 2d at 872. Thus the initial discipline usually should not be the most severe, i.e., dismissal. The court made it clear that the State Personnel Board

set a policy that the agency "may attempt to correct unacceptable behavior 'whenever practical' prior to taking formal action against an employee." *Id.* at 873. The court specifically said that a "performance improvement plan" is not required by the regulations. *Id.* "Practical" considerations could lead to dismissal without an improvement plan. *Id.* The circuit court took that language and said that the Supreme Court had not addressed whether counseling was required before discipline. The trial court quoted a section of the State Personnel Board regulations that required an agency to counsel employees who "demonstrated unsatisfactory performance." The court also cited a statute that described one of the principles of the state personnel system as the retention of employees. Miss. Code Ann. 25-9-103(d) (1991).

The trial court was correct in its observations, but not in its conclusion. First, counseling and "performance improvement plans" are different methods for an agency to correct what it perceives to be employee deficiencies. If an agency is solely dealing with unsatisfactory performance, and not something that rises to a Group III offense that might justify termination, then counseling is required. The circuit court's merger of the dismissal authority with the counseling obligations for unsatisfactory performance was incorrect.

The supreme court's decision in *Young* permits an employee to be dismissed or otherwise disciplined if in the agency's proper exercise of discretion it concludes that counseling or an improvement plan are not practical initial steps. We do not find the agency to have been arbitrary or capricious in that conclusion here.

*5. Failure to conduct pre-termination hearing within 20 days.*

A regulation of the State Personnel Board requires the following:

In extraordinary circumstances an employee may be suspended immediately with pay. Such employee must be given an opportunity for a hearing within twenty (20) working days of the suspension, at which time the appointing authority may make a final decision.

Viola was suspended with pay on March 6. The conference was not held until March 28, 22 calendar days later. In the normal scheme of employment, it would be obvious that 22 calendar days would not exceed 20 working days. A question arises in this case because of the following stipulation: a law enforcement officer with the State Tax Commission is considered to be on call 24 hours a day, seven days a week. There is no evidence that Viola worked 24 hours day, seven days a week. In February, to pick the comparable days of the 6th of the month to the 28th, Viola worked nine days. Since he was suspended from March 6 to March 28, of course, Viola worked no days during that period.

The import of this personnel board regulation is that an employee will receive a hearing promptly. The bright line rule for promptness was 20 working days. When an employee's schedule is not as rigid as the norm, the bright line can at times be a little more difficult to discern. Nonetheless, we see clearly that the 22 days that passed between the notice and the hearing was not more than 20 working days.

*6. Denial of due process by the notice and the hearings.*

At the March 28, 1991, hearing, Viola asked for clearer specifications of the charges against him.

The circuit court found it error for Dr. Marx not to delay ruling. The trial court relied upon a case that an official should not proceed, if, as the circuit court quoted, the decision maker "could be expected to know that certain conduct would violate statutorily constitutional rights. . . ." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). When that occurs, the official is to "hesitate" to act. Id. "Harlow" was Bryce Harlow, a senior aide to President Richard Nixon. The issue was whether Harlow and another aide, Alexander Butterfield, the man who announced to the Senate Watergate Committee that the White House tapes existed, were immune from suit for acts they took that allegedly violated Ernest Fitzgerald's constitutional rights. The issue before the United States Supreme Court was whether Harlow and Butterfield had absolute or some lesser version of immunity from suit since the allegations concerned steps that they took in their official governmental capacity. The Supreme Court held that if a legitimate issue existed that a contemplated action would violate someone's constitutional rights, and absent exigent circumstances, immunity could be lost if the official did not delay action. *Harlow*, 457 U.S. at 818.

Viola makes this a due process right of "hesitation" that was ignored in the present case. The case had nothing to do with due process, and only discussed immunity. Viola allegedly did not have sufficient information on the charges. In fact, on March 14 written notice of the charges was given to Viola. That notice was that he had violated a specific section of the Employee Handbook, already quoted above in this opinion, concerning "negligence in regard to the agency's duties to the public. . . ." The charge was then specified to be the

failure to make deposit of funds collected by you in a timely manner as required by general order 87-05 (copy enclosed) requiring that all state money be deposited within twenty-four hours. . . . An example of this appeared on March 1, 1991, when twenty-six receipts written on dates ranging from February 20 through February 28 were deposited. On that same date $527.40 was collected by you but not deposited until March 6, 1991.

Viola at no time has challenged the substance of these allegations. Instead, he has alleged the various defects in the adoption of the 24 hour rule, and other details set out in previous discussions.

The U. S. Supreme Court has required "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). The State Tax Commission notice and the hearing fully complied with this requirement. There is no constitutional hesitation right. This is the right that is relevant here: the process be followed that is due a state employee prior to termination. If someone has gotten insufficient notice, the proceedings should not continue. That requirement does not need to be transformed into a new constitutional right. There was adequate notice in this case as defined by *Loudermill.* Dr. Marx properly proceeded with the hearing.

*7. Collateral estoppel/res judicata effect of unemployment benefit determination.*

During the pendency of the termination proceedings and appeals, the Mississippi Employment Security Commission (MESC) ruled on Viola's claim for unemployment benefits. The hearing was held before an appeals referee of the MESC on May 10, 1991. Benefits were awarded, and a finding of no misconduct was entered. The Tax Commission did not appeal that ruling. There were factual questions of whether the attorney from the State Tax Commission received proper notice of the decision, and whether she tried to have the proceedings reopened. The record supports that notice

was given, and that no steps were taken to appeal or reopen.

The Employee Appeals Board found that the MESC ruling was not collateral estoppel or res judicata of whether Viola had committed a Group III offense. However, the circuit court disagreed. It relied on a supreme court decision which in its statement of facts commented that the Employee Appeals Board in that separate case had permitted an unemployment benefits determination to be collateral estoppel in proceedings to terminate the employee. *Bertucci v. Mississippi Dept. of Corrections,* 597 So. 2d 643, 644-45 (Miss. 1992).

The trial court found there to be a disparity in treatment by the EAB in one case applying collateral estoppel, and not in another. We deal with that argument first. Collateral estoppel and res judicata are legal concepts with definable meanings, the ultimate decision on their application being a matter for de novo review by a court. The *Bertucci* supreme court decision dismissed the appeal, and made absolutely no decision regarding the applicability of these legal doctrines. *Bertucci,* 597 So. 2d at 647. If the EAB in fact did determine that an earlier unemployment benefits determination would be collateral estoppel in a subsequent termination action, then assuming for purposes of analysis that the conclusion was in error, all subsequent employees are not entitled to the same error. There is not a due process or equitable right to an erroneous application of the law. This is not an allegation, and certainly no proof, that the EAB since time immemorial had applied collateral estoppel in such circumstances, and then reversed itself as to Viola. It is only an allegation that in one other case the EAB did consider collateral estoppel applicable.

We must then determine whether in fact the unemployment benefits determination was an estoppel to a termination based on the same reasons. There is no specific Mississippi case law that any party has found, but there are many Mississippi cases defining res judicata and collateral estoppel. To understand the meaning of those definitions in this case, we first set out the different procedures for determining unemployment compensation and for permitting the termination of a state employee.

Under the unemployment compensation statutes, the former employee has the burden of proof of showing good cause for voluntarily leaving work, while the burden of proof of misconduct that led to involuntary dismissal is on the employer. Miss. Code Ann. 71-5-513 A(1)(c) (Supp. 1996). Conversely, in a termination action, the burden is upon an employee who has been dismissed "to furnish evidence that the reasons stated in the notice of dismissal . . . are not true or are not sufficient grounds for the action taken. . . ." Miss. Code Ann. 25-9-127 (Supp. 1996).

A recent Supreme Court case decision has restated the outline of and distinctions between collateral estoppel and res judicata:

Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made...

When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action. And collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to

questions which might have been litigated.

*Marcum v. Mississippi Valley Gas Co., Inc.,* 672 So. 2d 730, 732-733 (Miss. 1996), quoting *Dunaway v. W.H. Hopper and Associates, Inc.*, 422 So. 2d 749 (Miss. 1982). *See also Norman v. Bucklew*, 684 So. 2d 1246 (Miss. 1996). The *Marcum* court relied on the Restatement (Second) of Judgments for some of its analysis. *Marcum*, 672 So. 2d at 734. We also turn to that Restatement for the application of these doctrines to administrative tribunals, an issue that did not exist in *Marcum*. In the Restatement, the following conclusions are made:

(1) Except as stated in Subsections (2), (3), and (4), a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

(2) . . .;

(3) An adjudicative determination of a claim by an administrative tribunal does not preclude relitigation in another tribunal of the same or a related claim based on the same transaction if the scheme of remedies permits assertion of the second claim notwithstanding the adjudication of the first claim.

(4) An adjudicative determination of an issue by an administrative tribunal does not preclude re-litigation of that issue in another tribunal if according preclusive effect to determination of the issue will be incompatible with a legislative policy that:

(a) the determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceeding; or

(b) the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

. . . .

Restatement (2nd) of Judgments, 83 (1982).

Our starting point is that the legislature created two separate statutory agencies and procedures. One is for an employee to contest his termination, and the other is for the employee to make a claim for unemployment compensation. There is nothing in either statute that suggests a resolution under one should have preclusive effect on the other. The dual proceedings can be occurring simultaneously, and there is no need for continual advising of either the MESC or the EAB of whether the other board or commission's proceedings have been concluded. For example, if the unemployment compensation issue was resolved adversely to the employee prior to the hearing by the Employees Appeal Board, we do not find it compatible with the EAB process that the unemployment compensation decision prevents the EAB from making an independent decision regarding the discharge. Viola, of course, wants the opposite, i.e., that a favorable unemployment benefits decision should preclude any separate conclusion by the EAB.

Looking to the Restatement's point of legislative policy, we note that the EAB is obligated to provide the employee a "de novo" hearing with "all applicable safeguards of procedural due process." Miss.

Code. Ann. 25-9-131(1) (1991). The Tax Commission cited, but the circuit court rejected, two cases from other jurisdictions that found no collateral estoppel under similar circumstances. *Shovelin v. Central New Mexico Elective Co-op., Inc.*, 850 P. 2d 996, 1004-1005 (N.M. 1993); *Shelton v. Oscar Meyer Foods Corp.*, 459 S.E. 2d 851, 854-855 (S.C. 1995). We find those cases persuasive, and also address a quite similar decision of the Iowa Supreme Court. *Matter of Kjos,* 346 N.W. 2d 25 (Iowa 1984). There the state commission denied a police officer unemployment benefits because of a finding that misconduct caused his dismissal. The Iowa Supreme Court in reviewing the appeal from a separate administrative proceeding terminating the employee, found that the earlier unemployment benefits decision was not collateral estoppel. *Kjos*, 346 N.W. 2d at 28-29. Relying on the Restatement of Judgments, the court rejected issue preclusion for the following reasons:

1. "The present controversy involves two independent state administrative tribunals which may operate simultaneously in adjudicating different claims based on the same facts." *Id.* at 28.

2. The standards for "misconduct" under the unemployment benefits scheme and in Iowa's analog to the EAB were different: "It is sufficient to note the standards are different and neither is totally subsumed in the other." *Id.* at 29.

3. "We find that by establishing one administrative remedy for challenging the discharge and a separate remedy for seeking unemployment compensation the legislature had provided a scheme of remedies in which an adjudication of one claim will not bar the other." *Id.*

We find these arguments to be compelling. The only reason that the circuit court stated otherwise was reliance upon *Bertucci*, 597 So. 2d at 645. As already discussed, that case makes no decision regarding the application of collateral estoppel, but merely notes that the EAB applied that doctrine in the case. *Id.*

Similar to the Iowa statutory scheme in *Kjos*, our statutes that permit dismissal for misconduct create a factual standard that is different from the facts that control over whether unemployment benefits should be denied to a terminated employee. Unemployment benefits may be denied to a terminated employee only if the person was discharged for misconduct. Miss. Code Ann. 71-5-513 A. (1)(b) (Supp. 1996). "Misconduct" requires a wanton disregard of the employer's interests. *Mississippi Employment Sec. Com'n v. Phillips,* 562 So. 2d 115, 118 (Miss. 1990). On the other hand, an employee may properly be terminated "for inefficiency or other good cause.. . ." Miss. Code Ann. 25-9-127 (Supp. 1996). Group III offenses permitting discharge of a state employee are those "occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees. . . ." As the Iowa Supreme Court stated regarding the different standards for awarding unemployment benefits and for rejecting a termination, "[I]t is sufficient to note the standards are different and neither is totally subsumed in the other." *Kjos*, 346 N.W. 2d at 29.

We hold that since the legislature established dual statutory schemes for awarding unemployment compensation and for an employee to contest a discharge, neither agency (the EAB or the MESC) has the right for its decision to control what the other agency does. Collateral estoppel does not apply.

*8. The effect of a prior EAB order on admission of certain evidence.*

Viola argues that the State Tax Commission agreed in the previous disciplinary proceeding that was concluded a few weeks before the present one began, to "forgive" Viola for offenses that occurred prior to that previous hearing.

We have examined the documents that were introduced in the EAB hearing that resulted in Viola's dismissal. We agree with the Tax Commission that three of the contested exhibits only deal with events that occurred after the agreed judgment in the previous disciplinary proceedings. The other exhibits do include some events prior to the "forgiveness" date, but these exhibits were accepted into evidence to rebut allegations Viola had made regarding disparate treatment. The hearing officer specifically said that he admitted the exhibits because "there's been some allegations that Mr. Viola was being treated differently than similar situated employees."

We find no error in the admission of these documents.

*9. EAB's failure to reopen the case.*

The circuit court found the EAB to have been arbitrary and capricious when it refused to reopen the case upon Viola's motion. After the EAB had ruled the discharge proper, the following grounds were stated in a motion partially to reopen the case:

1. Another similarly situated employee had failed to deposit funds promptly and had not been discharged;

2. The Mississippi Department of Transportation was created and the transfer of the law enforcement division in which the other worked were transferred to that department.

Taking the second point first, the transfer of the division in which Viola had worked to a new agency, the Mississippi Department of Transportation, effective on July 1, 1992, should not put in abeyance all personnel matters that the State Tax Commission had initiated. Until the Department of Transportation assumed authority, the State Tax Commission was entitled to proceed and was indeed obligated to proceed with its whole range of responsibilities. There was no reason for the EAB to reopen the case on that grounds.

The other allegation is that Viola had found evidence of disparate treatment. The information regarding the employee came from an affidavit of Viola himself. It is based on being "advised by employees in the State Tax Commission" that another individual who had failed to "surrender funds in a timely manner for the third time" had merely been reprimanded. The assertions in the remainder of the affidavit do not indicate that they are based upon newly discovered evidence. Only the allegation regarding another specific employee was said to be new evidence.

The first difficulty with Viola's argument is that Rule 26C of the EAB Administrative Rules requires that the moving party contact the opposing party and the EAB to arrange for a telephone conference on the motion. The parties agree that no such effort to bring the motion on for hearing occurred. Thus the refusal to grant a motion that is not pursued by the moving party does not constitute arbitrariness.

Secondly, the issue of whether Viola had been treated more harshly than other employees had been thoroughly reviewed by the EAB. The EAB specifically found, based on the evidence that Viola had already introduced, that he was not "the victim of retaliatory treatment or disparate treatment." The hearing officer, who heard the evidence and whose opinion was affirmed by the EAB, said that much of the hearing "was devoted to [the Tax Commission's] rebuttal [of Viola's] claims of disparate treatment based upon political and union activities. . . ." The hearing officer found these claims to be without merit. One new allegation of disparate treatment, based only on an affidavit of the claimant himself, could have easily been considered by the EAB to be cumulative and not worthy of reopening the case. We do not find that decision to be arbitrary or capricious.

*10. Abuse of discretion in overruling Motion for Reconsideration or for specific findings of facts and conclusions of law.*

The circuit court stated that an additional reason for reversing was that the EAB should have sustained Viola's motion for specific findings of fact and conclusions of law. The order of the EAB was brief. Its substance was that Viola (1) had committed the offenses charged, (2) that he was not the victim of retaliatory treatment or disparate treatment, and (3) that his termination was not politically motivated, and therefore termination was justified.

Administrative agencies would better perform their adjudicatory responsibilities by making detailed findings of fact and conclusions of law. Still, the supreme court has refused to require that be done. In some cases, the supreme court has found the reviewing of administrative decisions to be difficult because of the absence of such findings. *Duckworth v. Mississippi State Bd. of Pharmacy*, 583 So. 2d 200, 202 (Miss. 1991). The restrictions courts must honor in reviewing administrative decisions have been variously articulated. What is evident is that the courts

are not permitted to make administrative decisions and perform the functions of an administrative agency. . . . The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutorily constitutional right of the complaining party.

*Mississippi State Tax Com'n. v. Mississippi-Alabama State Fair*, 222 So. 2d 664, 665 (Miss. 1969), *cert. denied,* 396 U.S. 940 (1969) .

The only fact finding that is required by the administrative agency is "ultimate" fact finding. *Illinois Cent. R. Co. v. Jackson Ready-Mix Concrete,* 137 So. 2d 542, 546 (Miss. 1962). Though the "better form" is for more detail fact finding, the absence of such detail fact finding will not itself constitute reversible error. *Mississippi Public Service Com'n v. AAA Anserphone, Inc.,* 372 So. 2d 259, 264-65 (Miss. 1979).

In this case, the findings of the Employees Appeal Board included the ultimate fact of guilt of the offense charged. The EAB in addition addressed to the defenses raised by Viola, including the retaliatory treatment and political motivation. These findings are supported by substantial evidence, and their brevity is not grounds for reversal.

*11. The circuit court's consideration of evidence outside of the EAB record.*

This issue concerns evidence that the circuit court admitted regarding damages and attorneys fees that should be awarded to Viola. The Tax Commission argues that taking such evidence is a violation of the restriction that appellate courts (including a trial court acting on appellate review) "is limited to the record and to the agency findings." *Mississippi Com'n. on Environmental Quality v. Chickasaw County Bd. of Sup'rs.*, 621 So. 2d 1211, 1216 (Miss. 1993). That limitation is a correct statement of the law. Its application to the facts of this case is moot since we have already concluded that the dismissal was proper. Without an improper dismissal, there is no basis on which damages or attorneys fees could be awarded.

*12. Awarding of attorney fees, court costs, pain, suffering and mental anguish under 42*

*U.S.C. Sections 1983 and 1988*

The circuit court awarded a total of over $40,000 in attorneys fees, court costs and other damages to Viola. The circuit court made this award under 42 U.S.C. Sections 1983 and 1988. The award was, of course, against the State Tax Commission.

The United States Supreme Court has determined that a state and its subdivisions are not "persons" under Section 1983, against whom the penalties of this statute can be applied. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). Viola cites one case on the ability of state courts to enforce the provisions of these two federal statutes, but it does not address the prohibition of using these statutes against a state. *Barrett v. Miller*, 599 So. 2d 559, 564 (Miss. 1992). The two cases that Viola cites that involve state agencies were decided before *Will*, and therefore are of no utility on the issue raised here. *Burrell v. Mississippi State Tax Com'n,* 536 So. 2d 848 (Miss. 1988); *Marx v. Truck Renting and Leasing Ass'n Inc.,* 520 So. 2d 1333 (Miss. 1987).

We do not further examine this issue because, as was also true under the preceding issue, our reversal of the circuit court and agreement with the EAB that Viola was properly discharged, makes moot the issue of damages.

*Conclusion*

This appeal from a circuit court's reversal of an administrative agency is somewhat unusual. Unlike the normal case, the appellant is not so much in need of demonstrating where the lower court was wrong; the appellant must prove that the administrative agency was right. In this case, the Tax Commission quite properly raised issues regarding the circuit court's incorrect analysis of the EAB's decision. However, even if we agree with all the reasons raised by the Tax Commission, we still need to satisfy ourselves that the circuit court was not correct in reversing the EAB for some other reason. In other words, if the circuit court had some unassailable reason for reversing the EAB, an appellant might decide just to ignore that reason on appeal. We would err in reversing merely because we agreed with an appellant on all the errors that it discussed.

We have examined the circuit court's two opinions, and find no separate justification for the reversal of the EAB. Instead, we conclude that the EAB's decision was supported by substantial evidence,

was not arbitrary nor capricious, and did not violate a statutory or constitutional right of the employee.

**THE JUDGMENTS OF THE CIRCUIT COURT OF TISHOMINGO COUNTY OF MAY 10, 1995 AND OF OCTOBER 21, 1993 ARE REVERSED, AND THE ORDER AND JUDGMENT OF THE MISSISSIPPI EMPLOYEE APPEALS BOARD OF OCTOBER 21, 1992, IS REINSTATED IN ITS ENTIRETY. ALL COSTS ARE TAXED TO THE APPELLEE.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.**