## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-02149-COA

JAMES T. SMITH                                                    APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                          APPELLEE
EMPLOYMENT SECURITY

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/2013 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES T. SMITH (PRO SE) |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | LEANNE FRANKLIN BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED DECISION OF THE MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY THAT APPELLANT WAS DISQUALIFIED FROM RECEIVING UNEMPLOYMENT BENEFITS |
| DISPOSITION: | AFFIRMED – 02/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND JAMES, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    James T. Smith was fired from Resorts Casino (Resorts) pursuant to the company's progressive discipline policy on March 15, 2013. A claims examiner for the Mississippi Department of Employment Security (MDES) initially determined that Smith was entitled to unemployment benefits. Resorts appealed the claim examiner's determination and, ultimately, an administrative judge (AJ) determined that Smith was fired for misconduct and was disqualified from receiving benefits. The MDES Board of Review and the DeSoto

County Circuit Court affirmed the AJ's decision. Aggrieved, Smith appeals.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. Smith was employed as a games dealer by Resorts for one year and four months. When Smith began his employment at Resorts, he signed a document stating that he had read and agreed to the terms contained in the employee handbook, including a progressive discipline policy. The discipline policy provided the following procedure for employee discipline: verbal counseling for the first offense, a written warning for the second offense, a final warning for the third offense, and discharge for a subsequent offense.

¶3. In July 2012, Smith was given verbal counseling after a gambling mistake took place at his table. Resorts said the mistake occurred due to Smith's inattentiveness. In August 2012, Smith received a written warning after making an incorrect payout to a player that resulted in a forty-five-dollar loss to Resorts. In February 2013, Smith received a final written warning because he did not call a floor supervisor to assist him with a subsequent mistake at his table, contrary to Resorts' policy. Smith admitted to being aware of this policy, but claimed the floor supervisor ignored his requests to come to his table. Finally, on March 8, 2013, an improper bet was placed at Smith's table. Smith was aware of the mistake and again failed to notify a supervisor. Since the March 8, 2013 offense was Smith's fourth offense, Resorts fired Smith pursuant to the discipline policy. After each of Smith's warnings, he signed a document acknowledging that he had received the warning.

¶4. On March 19, 2013, Smith filed for unemployment benefits. An MDES claims examiner investigated Smith's claim and determined that Resorts had failed to show that Smith was fired for misconduct and, thus, was entitled to receive unemployment benefits.

2

Resorts appealed the claims examiner's determination to an AJ. After a telephonic hearing, the AJ determined that Smith was disqualified from receiving benefits because he was fired for misconduct. Smith appealed the AJ's decision to the MDES Board of Review. After adopting the AJ's findings of fact, the Board affirmed the decision. Smith subsequently appealed to the circuit court, which also affirmed the Board's decision. Aggrieved, Smith now appeals the circuit court's judgment.

## STANDARD OF REVIEW

¶5.     Mississippi Code Annotated section 71-5-531 (Supp. 2014) states that the Board's findings of fact are conclusive if supported by evidence and if no fraud is involved. Therefore, this Court's jurisdiction on appeal is "confined to questions of law." *Id*. The Board's findings create a rebuttable presumption, and the burden lies on the challenging party to prove otherwise. *Allen v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994).

¶6.     "If substantial evidence supports the [B]oard's fact-finding and the relevant law was properly applied to the facts, the appellate court *must* affirm." *Barnett v. Miss. Emp't Sec. Comm'n*, 583 So. 2d 193, 195 (Miss. 1991) (emphasis added). If the Board's findings are supported by substantial evidence, "the fact that this Court, if charged with weighing the evidence, might find otherwise is irrelevant." *Id*. at 196-97. "[T]his Court must not reweigh the facts of the case or insert its judgment for that of the agency." *Allen*, 639 So. 2d at 906.

## DISCUSSION

¶7.     It is well settled that "[t]he burden of proof of disqualifying misconduct by clear and convincing evidence is lodged with the employer." *Gore v. Miss. Emp't Sec. Comm'n*, 592

3

So. 2d 1008, 1010 (Miss. 1992). The Mississippi Supreme Court addressed the definition of "misconduct" in *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). There, the supreme court defined "misconduct" as:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents and good faith errors in judgment or discretion [are] not considered "misconduct."

*Id.* (citation omitted). Furthermore, "repeated neglect of an employer's interests may rise to the [level] of misconduct." *Miss. Emp't Sec. Comm'n v. Phillips*, 562 So. 2d 115, 118 (Miss. 1990).

¶8. Resorts' four-strike discipline policy reflects a cohesive disciplinary procedure for repeated violation of the company's rules. Here, Smith's offenses consisted of acts and omissions that Resorts clearly outlined in its employee handbook as being prohibited. As stated previously, Smith signed Resorts' employee handbook, where he acknowledged and agreed to adhere to Resorts' policies, including the discipline policy.

¶9. The record further indicates that Smith signed acknowledgment forms for each of his first three offenses, thereby admitting his disregard for Resorts' policies. The fourth and final offense, Smith's deliberate failure to contact a supervisor after recognizing a mistake at his gaming table, was a policy that had been previously outlined by Resorts to Smith and one which Smith clearly recognized. Smith had already violated the policy once, at which

time he incurred his third offense. The requirement to contact a supervisor when a mistake was made at Smith's table was part of a policy that was obviously designed to protect Resorts' interests.

¶10. Furthermore, the supreme court has held that it is not just whether the final offense in a string of offenses is substantial "but whether the employee showed a pattern of misconduct evidencing persistent disregard for the interests of the employer." *Kellar v. Miss. Emp't Sec. Comm'n*, 756 So. 2d 840, 844 (¶10) (Miss. 2000). In *Kellar*, a man who was employed as a games dealer was written up by his employer for four separate violations of casino policy. *Id*. at 842 (¶2). The fifth and final incident involved him removing and eating a can of pineapple from the employee salad bar and refusing to pay for it. *Id*. The supreme court noted that the fact that it was the fifth incident solidified its rising to the level of misconduct. *Id*. at 844 (¶¶15-16).

¶11. The supreme court's analysis and holding in *Kellar* serves to further justify the conclusion that Smith committed misconduct worthy of termination, particularly when the offenses are viewed in the aggregate. Accordingly, we find that there is substantial evidence in the record to support the conclusion that Smith committed misconduct and was disqualified from receiving unemployment benefits. As such, we affirm the circuit court's judgment.

¶12. **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**