DANIEL RIVARD vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY.

Bristol.  September 17, 1982. — October 27, 1982.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Employment Security,* Voluntary unemployment.

A city employee was deemed to have left his employment "voluntarily"
within the meaning of G. L. c. 151A, § 25 (e) (1), and thus was barred
from receiving unemployment compensation benefits, where his serv-
ices were terminated by the city for the reason of his failure to reim-
burse the municipal retirement system as required by G. L. c. 32, § 3
(6) (c), for pension contributions withdrawn by him following a
previous period of employment with the city. [530]

CIVIL ACTION commenced in the Attleboro Division of the
District Court Department on May 29, 1981.

The case was heard by *Leonard,* J.

The case was submitted on briefs.

*Theodore J. Koban* for the employee.

*Francis X. Bellotti,* Attorney General, & *George J. Ma-
hanna,* Assistant Attorney General, for Director of the Divi-
sion of Employment Security.

*Robert S. Ovoian,* Assistant City Solicitor, for the city of
Attleboro.

WILKINS, J. In this appeal by a claimant for unemploy-
ment compensation benefits, we are presented with the
questions whether a person whose employment was barred
by statute, because of his own act, may nevertheless receive
unemployment compensation when the employer, realizing
the statutory prohibition, ceased to employ the claimant. In
the terms of G. L. c. 151A, § 25 (e) (1), may benefits be
denied to such a person because he left his job "voluntarily"?
At least in the circumstance of this case, we conclude that a

person who causes the statutory impediment that bars his employment leaves his employment "voluntarily" within the meaning of § 25 (e) (1) when the employer realizes the impediment and terminates the employment.[1]

The claimant was first employed by the city of Attleboro as an assistant zoo keeper. In April, 1980, he left that position and withdrew his accumulated deductions from the municipal pension fund. At that time, he signed a request for his accumulated deductions which included the following: "I understand, however, that if I hereafter should return to active service as an employee within 2 years from the date of my termination of service I must, as a condition of re-employment, pay into the annuity savings fund of the Retirement System in one sum an amount equal to the accumulated regular deductions withdrawn by me, together with regular interest to the date of my re-employment." This statement parallels, but not in exact words, language appearing in G. L. c. 32, § 3 (6) (c), as amended. Section 3 (6) (c) also states that a person who receives his accumulated deductions shall not "become so re-employed within such two-year period unless such repayment shall be made upon such re-employment." If such a payment is made, the person is "entitled to all creditable service resulting from his previous employment." G. L. c. 32, § 3 (6) (c).

In late October, 1980, the city rehired the claimant to work as a reserve policeman "on an as needed basis from a civil service list." He worked approximately 250 hours until February, 1981, when the city realized that he had not complied with the statutory requirement to return his accumulated pension contributions plus interest. The city gave the claimant the opportunity to make such a lump sum pay-

---

[1] Although the claimant argues that his departure from work was involuntary, he does not claim that the other condition of § 25 (e) (1) for disqualification was not met — a departure "without good cause attributable to the employing unit." See *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 596 (1974). The employing unit did have good cause to terminate the claimant's employment because he should not have been rehired in the circumstances.

ment, but he was unable to do so. The city has not called him to work as a reserve policeman since February 8, 1981.

A review examiner concluded that the claimant's separation from work was "voluntary without good cause attributable to the employing unit" within the meaning of G. L. c. 151A, § 25 (e) (1). The board of review denied the claimant's application for review and, on appeal to the Attleboro District Court, the agency decision was affirmed. We affirm the judgment.

There was a statutory prohibition against the city's rehiring the claimant within two years of the termination of his employment unless the claimant made an appropriate make-up payment in one sum to the annuity savings fund of the city's retirement system. The claimant knew of the requirement. We assume he made every reasonable effort to obtain the funds needed to repay the annuity savings fund and failed.

One might question whether the Legislature ever intended to require the payment of unemployment compensation benefits upon the termination of employment which by law a claimant should never have received. We need not face the issue in this form. Here, the claimant withdrew his accumulated contributions with knowledge of the consequences of that withdrawal if he should, within two years, be rehired by the city and not make any appropriate repayment. We think that, in these circumstances, the claimant terminated his employment "voluntarily" within the meaning of § 25 (e) (1). He created his disqualification and caused his termination by his own voluntary acts. See *Harvard Student Agencies* v. *Director of the Div. of Employment Sec.*, 12 Mass. App. Ct. 871 (1981).

*Judgment affirmed.*