# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CC-00877-SCT

*CITY OF CLARKSDALE, MISSISSIPPI*

*v.*

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION AND THEODORE R. HAWKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/94 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CURTIS D. BOSCHERT |
| | H. HUNTER TWIFORD, III |
| | A. JANE HEIDELBERG |
| ATTORNEY FOR APPELLEES: | PATRICK TATUM |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | REVERSED AND RENDERED - 9/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/2/97 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. This case is one of first impression before this Court. The crux of the case is whether failing to meet statutory requirements of employment constitutes misconduct as defined by this Court in the context of unemployment benefits. We find that it does and that Theodore Hawkins is not entitled to unemployment benefits. Therefore, the case is reversed and rendered.

## I.

¶2. Theodore Hawkins was hired as a police officer on or about October 20, 1992, by the City of Clarksdale, Mississippi ("Clarksdale"). After a determination that Hawkins could no longer be employed as a law enforcement officer because he had failed to pass the physical fitness element of the state certification requirements, Hawkins was terminated from his employment as a police officer with the Clarksdale Police Department on November 24, 1993.

¶3. Hawkins subsequently applied for unemployment compensation benefits with the Mississippi Employment Security Commission ("Commission"). In the predetermination interviews, Clarksdale's personnel director asserted that under state law, the City did not even have the option to retain Hawkins after he failed to become certified within the requisite time. Hawkins claimed that he was discharged because he did not complete his academy training and that he failed to complete the training because he "got hurt." Based on these two interviews, the Commission's program specialist did not recommend disqualification, and Hawkins was granted unemployment benefits.

¶4. Clarksdale appealed the initial determination, and a fact-finding hearing was conducted by an appeals referee of the Commission. At that hearing, Clarksdale appeared and presented witnesses, but Hawkins neither appeared nor testified in these proceedings in any manner, nor was any direct evidence presented in Hawkins's behalf by any representative.

¶5. The appeals referee entered his written decision finding that Clarksdale had not established misconduct. Clarksdale appealed the referee's decision to the full Board of Review of the Mississippi Employment Security Commission. The Board of Review adopted the findings of fact and opinion of the referee and affirmed that decision.

¶6. Clarksdale then appealed the Board of Review's decision to the Circuit Court of Coahoma County, Mississippi. In its opinion, the Circuit Court of Coahoma County viewed the issue as simply whether the record contained substantial evidence to support the Commission's decision, and found that such substantial evidence existed. The court neither addressed nor determined whether the facts presented by Clarksdale constituted employee misconduct as a mater of law, or even whether the misconduct standard was required under the facts presented.

¶7. From the decision of the circuit court, Clarksdale timely appealed to this Court. After careful review of the record and briefs in this case and subsequent to oral argument, we find that the lower court should be reversed and a decision rendered holding that Clarksdale is not responsible for paying unemployment benefits.

## II.

¶8. Hawkins was employed by Clarksdale on October 20, 1992, as a patrol officer with the Clarksdale Police Department. In September, 1993, Hawkins began his training course at the North Mississippi Law Enforcement Training Center (the "Academy") in Tupelo to become certified as a law enforcement officer as required by Miss. Code Ann. § 45-6-11. Hawkins passed the academic portion of the training, but on three separate occasions failed to reach the minimum physical training standards required by the Academy to become certified as a police officer. Hawkins could not achieve a score higher than sixty-eight percent (68%). A score of seventy percent (70%) is needed to become certified by the State of Mississippi.

¶9. Prior to his initial hiring, Hawkins was advised of the physical requirements necessary to be certified as a police officer. Also, Hawkins was required by the Clarksdale Civil Service Commission's Rules and Regulations, as a condition precedent to his being offered employment by the Clarksdale Police Department, to successfully pass a physical fitness and agility test given by the Clarksdale Civil Service Commission. This test is substantially identical to that required by the State.

¶10. Prior to entering the Academy, all Clarksdale police officers were informed that they must successfully complete all phases of the training at the Academy in order to become certified as law enforcement officers to retain their positions. All Clarksdale police officers, including Hawkins, knew that it was imperative that they be certified in order to remain employed as a policeman. Two months prior to starting at the Academy, Hawkins was given the opportunity and encouraged to participate in physical conditioning with other members of the police department also scheduled to attend the same training. Hawkins refused to participate in the training.

¶11. While at the Academy, Hawkins displayed a lack of interest and made little effort to perform to the best of his physical ability. An instructor at the Academy testified that on occasion during the training, Hawkins was able to complete four-to-five mile runs without quitting and was able to keep up with the rest of the class, but that on other occasions Hawkins would drop out of the runs. The same instructor testified that, when Hawkins was being timed for the test, he would "drop out and he'd walk a lot and things like that."

¶12. Hawkins refused to participate in extra conditioning sessions with the other Clarksdale officers who were attending the Academy at the same time. The Academy physical fitness instructor noted that he never witnessed Hawkins do any extra work to improve his physical conditioning. The Academy instructor also testified that in the two years of the North Mississippi Law Enforcement Training Center's existence, seven classes had been trained, and only one person other than Hawkins had failed the physical fitness element of the certification examination.

¶13. After completing six of the eight weeks of training at the Academy, Hawkins was given the physical fitness test to determine where he stood in relation to meeting the minimum requirements imposed by the State. He did not pass the test at that time. The final physical fitness test was scheduled for October 21, 1993. On October 8, 1993, Hawkins went to a doctor claiming knee problems. Hawkins's doctor gave him a medical excuse on the grounds of "knee strain -- tendinitis," and Hawkins was released to return to his regular duties on October 19. Because of his knee problems, he was not required to take the final physical fitness test. Hawkins was allowed to return home, but required to take the final test within 60 days of October 19, 1993.

¶14. On November 19, 1993, Hawkins returned to the Academy to take the make-up physical fitness test. When he took the test he was able to make eighty percent (80%) on the upper body phase of the exam, but could only make a fifty-six percent (56%) on the one and a half mile run. These two scores averaged out to a sixty-eight percent (68%) which was not a passing score. Hawkins was given two more opportunities on separate days to pass the test. He never made a score higher than sixty-eight percent (68%). Because Hawkins failed to appear at the fact-finding hearing, no testimony was available to the Commission concerning his personal preparation for the physical fitness test. Because Hawkins was not able to pass the physical fitness phase at the Academy, he was subsequently terminated by Clarksdale. This was the sole reason for his discharge. Clarksdale's position is that Hawkins's failure to successfully complete the Academy's requirements for the physical evaluations constituted misconduct on his part and was ground for his termination on November 24, 1993.

### III.

¶15. This Court has clearly set forth the standard of review of an Employment Security Commission ruling.

Judicial review of an Employment Security Commission ruling is limited to determination of whether the decision is supported by substantial evidence. . . . This Court must review the record to determine whether there is substantial evidence to support the Board of Review's findings of fact, and further, whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation benefits . . . .

Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 1989) provides that an individual may be disqualified for unemployment benefits if he was discharged "for misconduct connected with his work." The employer has the burden of showing by "substantial, clear, and convincing evidence" that the former employee's conduct warrants disqualification from eligibility for benefits . . . .

*Foster v. Miss. Employment Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994) (citations omitted). Judicial review of a decision of the Board of Review is also governed by Miss. Code Ann. § 71-5-531 (1995). Section 71-5-531 reads in pertinent part as follows:

In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

Miss. Code Ann. § 71-5-531 (1995). Thus, we must first determine whether the factual findings of the Commission were supported by evidence. If so, then the only questions before us are questions of law.

## IV.

¶16. Clarksdale contends that there is insufficient evidence to support the findings of fact by the Commission. The Commission, of course, says that there was ample evidence presented by Clarksdale itself. The appeals referee made the following findings of fact.

[Hawkins] was employed for little over a year as a police officer with the City of Clarksdale, Mississippi, until his separation on November 24, 1993. At that time, he was discharged by his employer for failure to meet or pass minimum physical requirement test as set aside by Law. The Law provides that an officer must pass the minimum standard of a physical within one year after being hired as a police officer. The Law officers [sic] sent to an eight week's [sic] school wherein they receive training and must pass this training to be certified. If they do not meet certification, then the City is obligated to terminate. In this particular case, claimant failed to pass the physical requirements of the test. On every occasion when he tried to pass the physical part of the test, he could not make 70%. He did get as close as 68% on two separate occasions, but never achieved the 70% as required. This was the sole reason for the claimant's dismissal. The employer feels that the claimant demonstrated a lack of effort on his behalf by not participating with fellow students and practice runs to achieve proper conditioning to pass the test. Furthermore, they feel that the claimant did not try to maintain his best as he would drop out of runs on numerous occasions when in the training program.

The findings of fact by the referee are supported by the evidence. In fact, the findings of fact are based upon nothing more than the testimony presented by Clarksdale. Clarksdale notes in its brief

that it presented "unrebutted testimony and evidence." Thus, the question before this Court is whether or not the Commission correctly applied the law in this case -- did Hawkins's actions constitute misconduct as a matter of law? We find that they did constitute misconduct -- not misconduct in the normal use of the word, but according to the statutory requirements of employment in this case.

¶17. We have previously defined the meaning of "misconduct" as follows:

> [T]he meaning of the term "misconduct," as used in the unemployment compensation statute, was **conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.** Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) (emphasis added). *See also Miss. Employment Sec. Comm'n v. McGlothin*, 556 So. 2d 324 (Miss. 1990); *Shannon Engineering and Constr., Inc. v. Miss. Employment Sec. Comm'n*, 549 So. 2d 446 (Miss. 1989); *Piggy Wiggly v. Miss. Employment Sec. Comm'n*, 465 So. 2d 1062 (Miss. 1985); *Miss. Employment Sec. Comm'n v. Borden, Inc.*, 451 So. 2d 222 (Miss. 1984).

¶18. Hawkins's actions were clearly in wanton disregard of Clarksdale's interest. "'Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests. Something more than mere negligence must be shown, although repeated neglect of an employer's interests may rise to the dignity of misconduct. *See Borden*, 451 So. 2d at 225.'" *Allen v. Miss. Employment Sec. Comm'n*, 639 So. 2d 904, 907 (Miss. 1994) (*quoting Miss. Employment Sec. Comm'n v. Phillips*, 562 So. 2d 115, 118 (Miss. 1990)). We find that reasonable and fair-minded external observers would consider Hawkins's actions to be in direct disregard to Clarksdale's legitimate interest of employing Hawkins. Clarksdale had a legitimate interest and reasonable expectations that Hawkins would become certified because it required him to pass a physical fitness test identical to the one required by the State prior to hiring Hawkins as a police officer. Hawkins had within his personal control the ability to pass the physical fitness test.

¶19. Further, we find that the case of *Richardson v. Miss. Employment Sec. Comm'n*, 593 So. 2d 31 (Miss. 1992), is controlling. In *Richardson*, we found that an employee's failure to maintain a valid driving license, where possession of a driving license is a condition of continued employment, constituted employee misconduct. *Richardson*, 593 So. 2d at 35. The Commission contends that *Richardson* is factually distinguishable. In its brief, the Commission states that Richardson was at fault and to blame for his driver's license suspension, and in the case sub judice, Hawkins's had a "mere inability to run fast enough." Thus, Hawkins was not in control of the condition precedent to his employment. We disagree, in that an individual's physical fitness can be uniquely within that

person's control.

¶20. There was evidence that Hawkins did not attempt to keep his physical fitness up to the standards required in order to pass the test at the Academy. Hawkins had the ability to "run fast enough" a year prior to entering the Academy to meet the physical requirements, but after training for eight weeks he was unable to do so. Hawkins passed a test identical to the State of Mississippi's physical fitness requirement for certification as a law enforcement officer prior to being employed by Clarksdale. The evidence proved and the referee found that two months prior to starting at the Academy, Hawkins was given the opportunity and encouraged to participate in physical conditioning with other members of the police department also scheduled to attend the same training. Hawkins refused to participate in the physical conditioning. However, while at the Academy, Hawkins was able to complete four-to-five mile runs without quitting and was able to keep up with the rest of the class, but that on other occasions Hawkins would drop out of the runs.

¶21. When Hawkins was given three opportunities to pass the physical fitness exam he never made above sixty-eight percent (68%) even though he had passed the test earlier to be employed by the Clarksdale police force in the first place. An instructor at the Academy testified that Hawkins displayed a lack of interest and made little effort to perform to the best of his physical ability. Thus, Hawkins failed to do what was in his control -- maintain his physical condition in order to pass the required physical fitness test.

¶22. Hawkins was in control of the condition precedent to his employment. Like the employee in *Richardson*, Hawkins failed to meet a condition precedent to employment that was in his control. Thus, his actions constitute misconduct as the statute and this Court has defined the term. It is the intent of the unemployment laws to benefit only those persons who are involuntarily unemployed through no fault of their own. ***See Miss. Employment Sec. Comm'n v. Gaines***, 580 So. 2d 1230, 1234 (Miss. 1991).

## V.

¶23. All police officers are required to be certified as being qualified by the laws of the State of Mississippi in order to remain employed after a year. Section 45-6-11(3)(a) (1993) of the Miss. Code Ann. reads in pertinent part as follows: "No person shall be employed as a law enforcement officer by any law enforcement unit for a period to exceed one (1) year unless that person has been certified as being qualified under the provisions of subsection (4) of this section." Clarksdale was required to dismiss Hawkins due to his failure to meet certain statutory requirements. This is analogous to the requirement that an employee be licensed in order to perform. Reviewing other jurisdictions, the majority of states find that failing some sort of license requirement for employment results in the employee's disqualification for unemployment benefits. ***See Markel v. Circle Pines***, 479 N.W.2d 382 (Minn. 1992); ***Yardville Supply Co. v. Bd. of Review, Dept. of Labor***, 554 A.2d 1337 (N.J. 1989); ***Freve v. Florida Unemployment Appeals Comm'n***, 535 So. 2d 649 (Fla. Dist. Ct. App. 1988); ***R. B. Mattox v. Admin., Div. of Employment Sec., Dept. of Labor***, 528 So. 2d 661 (La. Ct. App. 1988); ***Jones v. Commonwealth, Unemployment Compensation Bd. of Review***, 518 A.2d 1150 (Pa. 1986); ***Murphy v. Ky. Unemployment Ins. Comm'n***, 694 S.W.2d 709 (Ky. Ct. App. 1985); ***Look v. Maine Unemployment Ins. Comm'n***, 502 A.2d 1033 (Me. 1985); ***Rivard v. Director of the Div. of Employment Sec.***, 441 N.E.2d 257 (Mass. 1982); ***Bd. of Educ. of the City of St. Louis v.***

*Labor and Indus. Relations Comm'n, Div. of Employment Sec.*, 633 S.W.2d 126 (Mo. Ct. App. 1982); and *Cook v. Iowa Dept. of Job Serv.*, 299 N.W.2d 698 (Iowa 1980). *Compare Tanner v. Golden*, 377 S.E.2d 875 (Ga. Ct. App. 1989); *Lewis v. Admin., Unemployment Compensation Act*, 465 A.2d 340 (Conn. 1983); *Przekaza v. Dept. of Employment Sec.*, 392 A.2d 421 (Vt. 1978); and *Milwaukee County v. Dept. of Indus., Labor and Human Relations Comm'n*, 259 N.W.2d 118 (Wis. 1977). We find the law in Kentucky and Massachusetts persuasive. In *Murphy v. Ky. Unemployment Ins. Comm'n*, the Court of Appeals held that failure of an insurance agent to score a passing mark on the state test was an indication of his unskillfulness or incompetence in that line of work. Thus, the employer was entitled to terminate the employment relationship without liability for unemployment benefits. *Murphy*, 694 S.W.2d 709.

¶24. In *Rivard*, the Supreme Judicial Court of Massachusetts held that where the claimant's employment was barred by statute because of his own act, he could not receive unemployment compensation when the employer, realizing the statutory prohibition, ceased to employ him. *Rivard*, 441 N.E.2d 257. This case is directly on point with the facts of the case sub judice and provides persuasive authority.

¶25. Here, Hawkins was in control of whether or not he met the statutory requirement. He could have worked harder or trained more. Rather, he was content to do the minimum knowing that his employment was contingent upon him passing the physical fitness test. Thus, we hold that where an employee is barred from employment because he did not meet a statutory requirement as result of his own act, then the employee cannot receive unemployment benefits.

## VI.

¶26. Whether Hawkins passed the physical fitness test was within his control and thus, his failure was misconduct as a matter of law. The legislature should consider revisiting this law to determine if additional reasons should be added to relieve an employer of unemployment benefits. Employer's should not be responsible for unemployment benefits to individuals that were dismissed for failure to qualify for a position where the qualification is required by law. According to our decisions in *Wheeler* and *Richardson*, Hawkins's actions constituted misconduct. Therefore, Clarksdale should not be required to pay unemployment benefits. This case is reversed and rendered holding that Hawkins is not entitled to unemployment benefits.

¶27. **REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

    **McRAE, JUSTICE, DISSENTING:**

¶**28.** The majority is of the opinion that Theodore Hawkins conducted himself with willful and

wanton disregard of the interest of the City of Clarksdale merely because he was not able to meet the standards required to pass the Police Academy's physical fitness tests. Although the majority claims that its holding is limited to the facts of this case, the reality is that the majority has made a change as a matter of law that will apply to any case where an employee does not meet certain physical qualifications for a job. Because the majority's decision to disallow unemployment benefits to Mr. Hawkins is inherently unfair and contrary to the purpose of the unemployment compensation statutes, I must respectfully dissent.

¶29. The facts of this case indicate that the City of Clarksdale employed Hawkins knowing that he would have to meet the physical examination requirement in one year and knowing that his failure to do so would force the City to lay him off. Hawkins tried on three occasions to pass the physical training portions of the Academy's test, but he could not achieve a score high enough for the State of Mississippi to certify him as a police officer. The City of Clarksdale, however, failed to proffer sufficient evidence to show that Hawkins willfully neglected to get in condition to meet the Academy's physical requirements.

¶30. Simply because Hawkins previously was able to meet physical requirements does not mean that on this occasion he willfully chose not to prepare himself. What the evidence does show is that Hawkins participated in some of the conditioning activities with other members of the police department, though admittedly not all of them. He completed six of the eight weeks of training at the Academy but was released due to tendinitis of the knee. The City argues that Hawkins did not perform to the best of his ability, but this assertion is merely the subjective conclusion of a therapist. The City did not show that Hawkins's decisions to drop out of some runs or his decisions not to do any extra conditioning were a result of his willful disregard of the City's interest. Hawkins's knee problems appear to have played a major role in his decisions. Nonetheless, according to the City and the majority, Hawkins was in control of his physical condition and could have prepared himself to pass the physical requirements if he so desired. Some people do not have as much control over their physical capabilities as others do. To assume otherwise is totally unfair, particularly when doing so labels a person's physical difficulties as willful and wanton neglect constituting misconduct.

¶31. Although mentioned in its opinion, the majority appears to ignore that the burden is upon the employer to show, by substantial, clear, and convincing evidence, that the employee has engaged in such misconduct as to preclude his eligibility for unemployment benefits. *Foster v. Mississippi Employment Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994). Under the majority's ruling, Hawkins's prior ability to pass the physical examination created a presumption that he could pass it every time. The majority also assumes that harder work or increased training would have enabled Hawkins to pass the examination. The flaw in the majority's argument is that it penalizes an employee because of health reasons or the employee's inability to control his or her own destiny.

¶32. Consider the hypothetical employee who is involved in an automobile accident, on or off the job. The employee previously had been able to meet the physical requirements of the job. However, because of the injuries sustained in the accident, that employee now is permanently impaired physically. Try as he might, the employee is so impaired that he can no longer meet the physical requirements of the job. Under the majority's reasoning, that employee would not be able to recover unemployment benefits, based on his previous ability to meet the physical requirements; any subsequent failure to meet those requirements would constitute willful disregard amounting to

misconduct. I submit that this is not the desired result.

¶33. The employment statutes are designed to benefit those employees who are involuntarily unemployed. Although Hawkins's attitude toward conditioning might have constituted an error in judgment, his medical condition could have been the reason he could not pass the physical examinations. In any event, Hawkins's behavior certainly does not amount to willful and wanton disregard of the interest of the City of Clarksdale. I would therefore affirm the ruling of the Mississippi Employment Security Commission, granting unemployment benefits to Hawkins.

**BANKS, J., JOINS THIS OPINION.**