IRVING, J.,
for the Court:
¶ 1. On April 22, 1997, Willie M. Campbell was terminated from his employment at Ingalls Shipbuilding, Inc. On April 27, 1997, he filed a claim for unemployment benefits with the Mississippi Employment Security Commission. The claims examiner disqualified Campbell based upon a finding of misconduct. On appeal, the referee concluded that Campbell committed disqualifying misconduct. The Board of Review adopted the referee’s findings and opinion and affirmed the denial of benefits. On appeal to the Circuit Court of George County, an order affirming the Board of Review was entered on March 5, 1998. This appeal is from that order.
FACTS
¶ 2. Willie Campbell was employed by Ingalls Shipbuilding, Inc. for approximately fifteen years. His last job assignment with Ingalls was as a machinist. On April 7, 1997, he phoned in to Ingalls to request a week of vacation leave to attend his ailing grandmother who had been admitted to the hospital. His request for leave was granted, and he took the week off beginning April 7, 1997 and ending April 11, 1997. April 12, 13, 19, and 20 were not work days. 'He next contacted Ingalls on April 21, 1997 when he called in to report that he would not be able to return to work until he had obtained the services of someone who could be with his grandmother in her home during the day while he worked. The person he spoke with was his foreman, Danny Williams. He did not report to work on April 22, 1997, nor did he call in to report that he would not be coming to work. When he reported to work on April 23, 1997, he was told that he had been terminated for failing to report to work or call in, for seven consecutive work days, after his vacation time ended on April 11,1997.
¶ 3. On April 27, 1997 Campbell filed an initial claim for benefits under the Mississippi Employment Security Law. On May 13, 1997, the claims examiner disqualified Campbell for benefits under Miss.Code Ann. § 71-5-513 A (l)(b) (Rev.1995) on the ground that he was discharged for misconduct connected with the work. Campbell filed notice of appeal from that determination on May 14, 1997. A hearing before the referee was held on June 5, 1997, at which time Campbell and an Ingalls representative, Sandy Atwood, appeared and testified.
¶ 4. Atwood testified concerning Campbell’s discharge as follows:
A. Right, he was automatically cleared after missing consecutive days of absence.
Q. How are your employees made aware of the attendance policy?
A. When the employee is hired into the shipyard, they are told at the time ... they have orientation, they go through a day’s orientation when they are hired in and at that time it0 is covered and also, it’s in the labor agreement, the agreement between Ingalls Shipbuilding and the Metal Trades, dated February 11, 1996 and May 16, 1999 under seniority, says an employee shall lose all seniority privileges for any of the following reasons, which one of them is absence from work without explanation for a period of seven consecutive work days. When there is good cause established for such unexplained absence, the said employee shall retain the seniority privileges. Now, here is a copy of that.
¶ 5. Said copy reads in pertinent part as follows:
Section 10. Employees shall lose all seniority privileges for any of the following reasons:
(a) Voluntary quitting the employ of the Company
(b) Discharge for just cause.
(c) Layoff for twelve (12) months or more, except as qualified by Section 13.
*505 (d) Absence from work without explanation for a period of seven (7) consecutive workdays. When there is good cause established for such unexplained absence, the said employee shall retain his seniority privileges.
(e) Failure to report for work when notified as provided in Section 8 of this Article.
Atwood further testified as follows:
Q. In what way had Mr. Campbell violated the attendance policy?
A. Okay, he missed the seven consecutive days of absence. He was on vacation, he had called in or [sic] vacation for Monday, 4-7 through 4-11 which was Monday through Friday. Then after that we did not hear from him. He missed April 14th, 15th, 16th, 17th, 18th, 21st, and 22nd at which time he was automatically cleared. On April 24, 1997, we received documentation from Mobile Vascular Surgery clinic signed by Dr. Phillips at that clinic asking us to reinstate Mr. Campbell because he had lost it, he was taking care of his grandmother at that time, but this was after the fact we had not heard from him prior to that time and there is a copy of that.
Q. Was the vacation from April 7th through April 11th approved?
A. Yes it was, it was a call in vacation. Q. Now, did he contact anyone during ... from April 14th through April 22nd?
A. No, he did not.
¶ 6. Campbell testified and provided documentation that he did, in fact, telephone Ingalls early on the morning of April 21, 1997 and gave notice to his foreman, Danny Williams, that he would not be able to return to work until he obtained the services of someone to care for his grandmother while he worked. He testified as follows:
A. They said that I did not call in, when I have documentation showing that I did call in right here. I had to wait on my phone bill, this will prove that I did call in on the 21st and told Mr. Danny Williams that I wouldn’t be able to come in because I had to get someone to stay with my grandmother and I came in on the 23rd and they had already fired me on the 22nd. I went to Mr. Reed first, Mr. Reed sent me back to the department head. The department head told me they had no reason to reinstate me, just consider myself to be terminated. I had one union representative there, Mr. Reed was never there. He stayed in his office and here’s the paperwork right here for my phone bill showing that I did call in on 4-21. I talked to my foreman, Mr. Danny Williams.
Q. I’m going to circle, that’s number ten on your phone bill, just for Mr. Atwood’s benefit there. Ms. Atwood? Is that an on sight phone number?
Atwood: 935 is Ingalls number.
Q. Any objection on that?
Atwood: No.
¶ 7. The referee made a finding that Campbell was discharged for violation of Ingalls’s attendance policy. She found that Campbell was aware of the policy and failed to abide by the policy. She further found that Campbell had good personal reasons for being absent from work but that he did not take the necessary steps to secure his employment by following In-galls’s attendance policy. In her finding of facts, the referee also found that Campbell did .contact one of his supervisors on April 21, 1997 to let the supervisor know that he was at the hospital with his grandmother. She ultimately held that Campbell’s actions of absenteeism without notification would be considered misconduct connected with the work as that term is used in the *506 law and would warrant a disqualification for benefits.
¶ 8. As stated, the Board of Review and the Circuit Court of George County affirmed the referee’s denial of benefits, finding that Campbell was terminated for violation of a company attendance policy which amounted to misconduct connected with work, thereby disqualifying him from receiving unemployment benefits pursuant to Miss.Code Ann. § 71-5-513 A(l)(b) (Rev.1995). This Court disagrees and reverses and renders.
ISSUES
¶ 9. The issues in this case, taken verbatim from Campbell’s brief, are as follow:
(1) THE BURDEN OF PROOF OF GOOD CAUSE FOR LEAVING WORK SHALL BE ON THE CLAIMANT. THE BURDEN OF PROOF OF MISCONDUCT SHALL BE ON THE EMPLOYER.
(2) DID WILLIE CAMPBELL MISS SEVEN CONSECUTIVE WORKDAYS AT WORK AT INGALLS SHIPBUILDING, INC. WITHOUT NOTICE TO HIS SUPERVISOR AT INGALLS?
(3) THE ORDER OF THE CLAIMS EXAMINER WAS ARBITRARY AND CAPRIOUS [SIC] AND NOT BASED ON SUBSTANTIAL EVIDENCE.
STANDARD OF REVIEW
¶ 10. It is well settled that our courts of appellate review give great deference to the findings and decisions of the Employment Security Commission and other administrative agencies:
This Court’s standard of review of an administrative agency’s findings and decisions is well established. An agency’s conclusions must remain undisturbed unless the agency’s order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights. A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Lastly, this Court must not reweigh the facts of the case or insert its judgment for that of the agency.
Allen v. Mississippi Employment Security Commission, 639 So.2d 904, 906 (Miss.1994) (citations omitted).
DISCUSSION OF THE LAW
¶ 11. Miss.Code Ann. § 71-5-531 A(l)(b) specifies when an individual will be disqualified for unemployment benefits:
For the week, or fraction thereof, which immediately follows the day on which he was discharged for misconduct connected with his work, if so found by the commission, and for each week thereafter until he has earned remuneration for personal services performed for an employer, as in this chapter defined, equal to not less than eight (8) times his weekly benefit amount, as determined in each case.
Miss.Code Ann. § 71-5-513 A(l)(b) (Rev.l995)(emphasis added).
¶ 12. “Misconduct” connected with work as used in § 71-5-513 has been defined as:
conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer [h]as the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, came within this term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or in advertences and ordinary negligence in isolated instances, and good faith errors in judgment or discretion were not considered *507 “misconduct” within the meaning of the statute.
City of Clarksdale v. Mississippi Employment Security Comm’n, 699 So.2d 578, 581 (Miss.1997) (citations omitted).
¶ 13. Ingalls argues that this Court should consider the record made before the Board of Review and, absent fraud, should accept the findings of fact if supported by the substantial evidence. It further urges this Court not to reweigh the facts nor insert its judgment for that of the Employment Security Commission. In finding the agency’s judgment in error we need look no further than the facts.
¶ 14. The fact is that Campbell called in on the morning of April 21,1997 and spoke with his supervisor, Danny Williams, and informed him of his predicament with his sick grandmother. Campbell also informed Williams that he would not be able to return to work until he obtained the services of someone to care for his grandmother while he worked. Initially, Ms. Atwood testified that Campbell did not contact anyone at Ingalls between April 14 through April 22, 1997; however, when confronted with Campbell’s testimony that he did call in, and his telephone bill showing a call to Ingalls at 6:37 a.m. on April 21, 1997, she admitted that the telephone number on Campbell’s telephone bill was an Ingalls number. The referee made reference to this call in her findings of fact and found that Campbell did call in and speak with his supervisor on April 21, 1997.
¶ 15. Having found that Campbell called in on April 21, 1997, this Court is at a loss to understand how Campbell can be said to have violated Ingalls’s attendance policy of not calling in or reporting to work for seven consecutive workdays. Campbell had only missed five consecutive work days at the time that he made the call to Ingalls on April 21, 1997. Not only did Campbell call in to report that he would not be returning to work until he found someone to stay with his ailing grandmother, he was also able to establish good cause for his five unexplained absences, as required by the terms of the labor agreement. Moreover, the policy in question related to loss of seniority, not termination, for missing seven consecutive work days. Under these facts, it is clear to this Court that the decision of the Board of Review — that Campbell was discharged for misconduct connected with his work within the meaning of the statute — is not supported by substantial evidence and is arbitrary and capricious. The decision of the lower court is reversed, and the Mississippi Employment Security Commission is ordered to pay benefits to Campbell forthwith.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY IS REVERSED AND THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION IS ORDERED TO PAY BENEFITS TO CAMPBELL FORTHWITH. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPEL-LEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.