CARLTON, J.,
for the Court:
¶ 1. Wendall Williams appeals the Washington County Circuit Court’s judgment, which affirmed the Mississippi Department of Employment Security Board of Review’s (Board of Review) denial of his request for unemployment benefits. Finding substantial evidence in the record supporting the Board of Review’s decision that Leading Edge Mississippi Inc. (Leading Edge) terminated Williams for misconduct relating to his employment, we affirm the decision of the circuit court that Williams’s work-related misconduct disqualified him from receiving unemployment benefits. Therefore, we affirm the circuit court’s judgment.[1]
FACTS
¶ 2. Williams worked as a repair aircraft spotter at Leading Edge, where he was employed from April 15, 2009, until his termination for misconduct on January 22, 2011. As a spotter, Williams was required to watch workers operating lifts to repair or maintain planes, and to notify the workers by sounding an alarm when the lifts came dangerously close to, or were about to collide with, a plane.
¶ 3. The specific misconduct at issue on appeal resulted from an incident that occurred on January 21, 2011. In his brief, Williams states that all of the employees in his hangar were assigned to work on the same particular plane. Williams claims that he was the first spotter finished with all of the lifts, and he states that he had no assigned duties left to perform. Williams explains that “it wouldn’t have looked right just standing there with no lifts to spot,” so he walked over to the work table to relax and wait for another lift to arrive. According to Williams, after about thirty minutes, he went to help another employee, Gary Godwin, another spotter, with a lift. Williams says he eventually noticed a lift coming through on his side, so he prepared to go over and to spot the lift. Williams claims he suddenly remembered a message someone had asked him to tell Godwin. William admitted to turning around to address Godwin. Williams claims that after he did so, the lift collided with the airplane wing, causing damage to *260 the airplane. Williams states that he blew his whistle, but he blew the whistle warning too late to prevent the collision.
¶ 4. After investigating the matter, Leading Edge determined that Williams disregarded his job duties and company policy, which constituted grounds for termination. Leading Edge terminated Williams, who then filed for unemployment benefits. An adjudicator interviewed Williams and Leading Edge. Leading Edge’s payroll manager, Takeisha Norman, informed the adjudicator that Williams left his work station to talk to another employee, thereby failing to carry out his duty to watch and to spot the lifts. As a result, Williams failed to warn employees that a lift was dangerously close to an airplane wing, which resulted in a collision. Leading Edge informed the adjudicator that Williams possessed, or should have possessed, awareness of the company policy requiring that spotters, including Williams, remain at their work station at all times. Leading Edge stated that had Williams remained at his work station, as required by policy, then the accident would not have occurred. After his investigation, the adjudicator disqualified Williams from receiving employment benefits, finding that he was discharged due to misconduct for leaving his work station without permission.
¶ 5. Williams appealed. The administrative law judge (ALJ) held a telephonic hearing on March 2, 2011. Norman testified on behalf of Leading Edge. Williams also testified. After the hearing, the ALJ affirmed the adjudicator’s decision finding Leading Edge terminated Williams for violating safety policy and procedure by leaving his work station and by failing to spot a lift before it collided with the airplane wing. The ALJ found that Williams’s actions in leaving his work station and fading to spot a lift constituted misconduct displaying a wilful and wanton disregard of his job duties and of Leading Edge’s known policy.
¶ 6. Williams appealed to the Board of Review, which affirmed the ALJ’s decision. The Board of Review adopted the ALJ’s findings of fact and decision, which stated, in pertinent part:
[Leading Edge] discharged [Williams] for failing to properly follow safety procedures. [Williams]’s duties were to spot lifts working on airplanes and blow a whistle or horn if the lift [was] in danger of hitting the aircraft. He was aware he was to spot any lift that was near the aircraft.
[Williams] and [Godwin] were engaged in a personal conversation^] and when they turned around[,] a lift was about to hit an airplane. [Williams] sounded the whistle[,] but it was too late. This resulted in damage to the aircraft. Both [Williams] and [Godwin] were discharged.
¶ 7. The Board of Review recognized that under Mississippi Code Annotated section 71-5-51S(A)(l)(c) (Rev.2011), an employer has the burden to establish that a claimant was discharged for misconduct connected to the employment. Citing the Mississippi Supreme Court’s definition of misconduct found in Wheeler v. Arriola, 408 So.2d 1381, 1883 (Miss.1982), and employing reasoning consistent with the ALJ, the Board of Review ultimately found that Williams’s conduct showed a wilful and wanton disregard of Leading Edge’s interests, and that Williams’s actions therefore constituted misconduct connected with his employment.
¶ 8. Williams then appealed to the circuit court, which affirmed the decision of the Board of Review on June 13, 2011. This appeal followed.
*261 STANDARD OF REVIEW
¶ 9. “[J]udicial review of a Board of Review’s ruling is limited.” Booth v. Miss. Employment Sec. Comm’n, 588 So.2d 422, 424 (Miss.1991). “[T]he findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Rev.2011). Thus, we give great deference to an administrative agency’s findings and decisions. See Allen v. Miss. Employment Sec. Comm’n, 639 So.2d 904, 906 (Miss. 1994). We must affirm if the decision is supported by substantial evidence. Reeves v. Miss. Employment Sec. Comm’n, 806 So.2d 1178, 1179 (¶ 5) (Miss.Ct.App.2002).
¶ 10. Our limited inquiry requires that we “not reweigh the facts of the case or insert [our] judgment for that of the agency.” Allen, 639 So.2d at 906. We will reverse an agency’s decision only when it (1) is not supported by substantial evidence; (2) is arbitrary or capricious; (3) is beyond the scope or power granted to the agency; or (4) violates a person’s constitutional rights. Id.; see also URCCC 5.03 (embodying this same standard).
DISCUSSION
¶ 11. On appeal, Williams denies possessing “original” responsibility for spotting the lift that collided with the airplane. In support of his argument, Williams claims he was not the original spotter assigned to the lift in question. Williams claims that each employee in the hangar on the night of the incident was assigned to work on the same airplane, thus insinuating that each employee was responsible for every lift. Although Williams makes numerous admonitions towards this Court and Leading Edge in his brief, he fails to make any specific factual or legal arguments[2] in support of his appeal of the denial of his request for unemployment benefits. Moreover, Williams fails to refute the factual finding and testimony that established he violated company policy by leaving his work station, and he fails to refute that he possessed responsibility, along with other spotters, for the airplane in question.
¶ 12. Mississippi statutory law provides that “an individual shall be disqualified for [unemployment] benefits ... for misconduct connected -with his work if so found by the department.” Miss.Code Ann. § 71-5-513(A)(l)(b) (Rev.2011). In Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982), the Mississippi Supreme Court addressed the meaning and construction of the term “misconduct” in the context of our unemployment-compensation statute. Misconduct is “conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.” Id. (citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941)). Misconduct includes “carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, *262 and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer[.]” Id. “Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered ‘misconduct’ within the meaning of the statute.” Id. “The employer has the burden of showing by ‘substantial, clear and convincing evidence’ that the former employee’s” actions warrant a finding of misconduct disqualifying him or her from benefits. City of Clarks-dale v. Miss. Employment Sec. Comm’n, 699 So.2d 578, 580 (¶ 15) (Miss.1997); see also Miss.Code Ann. § Tl — 5—513(A)(1)(c).
¶ 13. At the hearing before the ALJ, Norman, the payroll manager, testified on behalf of Leading Edge that the duties of Williams’s job were watching airplane repairmen use lifts to work on airplanes, and his duties required him to ensure that the lifts did not move dangerously close to the airplanes. Norman testified that Williams was aware of the company policy and the safety procedure. She also explained that on the night of the incident, Williams failed to properly spot a lift or to sound an alarm to warn that the lift was in danger of colliding with the airplane. The record reflects that Williams left his assigned station at the time of the collision at issue, and that had he remained at his station, he would have observed the lift in sufficient time to warn the lift operator. Norman explained that Williams’s failure to warn the lift operator of the dangerous proximity of the lift to the airplane resulted in damage to the airplane. Norman testified that a failure to follow safety procedures that leads to airplane damage constitutes grounds for termination from Leading Edge. Norman confirmed that Leading Edge indeed terminated Williams for “violating and not following proper safety procedures, causing [aircraft] damage.”
¶ 14. In his brief, Williams admits that when the new lift approached the aircraft on the night of the incident, “that was [his] cue, so [he] proceeded to go spot the newly arrived lift.” Williams also testified before the ALJ that he was aware that his job required him to spot whatever lifts were in the area. Williams acknowledged that if he had not turned his back to engage in conversation with Godwin, then he would have observed the lift move dangerously close to the airplane.
¶ 15. In applying the law to the record before us, we find that Leading Edge met its burden of establishing substantial, clear and convincing proof that Leading Edge discharged Williams for misconduct. See City of Clarksdale, 699 So.2d at 580 (¶ 15). The record shows by clear and convincing evidence that the actions of Williams constituted misconduct under the applicable statutory law and precedent. See Miss. Code Ann. § Tl — 5—513(A)(1)(b); Wheeler, 408 So.2d at 1883. Therefore, Williams’s claim for unemployment benefits lacks merit. Finding that the record contains substantial evidence supporting the findings and decision of the circuit court and Board of Review, we affirm.
¶ 16. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. See Allen v. Miss. Employment Sec. Comm’n, 639 So.2d 904, 906 (Miss. 1994) (An appellate court will reverse an agency's decision only when it (1) is not supported by substantial evidence; (2) is arbitrary or capricious; (3) is beyond the scope or power granted to the agency; or (4) violates the claimant’s constitutional rights.); see also URCCC 5.03 (stating a circuit court’s standard for reviewing an order from an administrative agency).

. We also note that Williams proceeds pro se in his appeal before this Court, and he fails to cite legal authority in support of his contentions. “Our supreme court has held that pro se parties should be held to the same rules of procedure and substantive law as represented parties.” Asanov v. Hunt, 914 So.2d 769, 771 (¶ 8) (Miss.Ct.App.2005) (citing Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss. 1987)). Any failure to cite authority in support of an argument precludes consideration of the issue on appeal. Boutwell v. Bautwe.il, 829 So.2d 1216, 1223 (¶ 29) (Miss. 2002). Despite this procedural bar, we will address the merits of Williams’s appeal.