# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CC-00446-SCT

*CITY OF GRENADA*

*v.*

*MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY AND STEFAN SANDERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/24/2020 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| TRIAL COURT ATTORNEYS: | GREGORY TODD BUTLER |
| | JESSICA TERRILL PULLIAM |
| | ALBERT B. WHITE |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GREGORY TODD BUTLER |
| | MALLORY KAYE BLAND |
| ATTORNEYS FOR APPELLEES: | ALBERT B. WHITE |
| | STEFAN SANDERS (PRO SE) |
| NATURE OF THE CASES: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/24/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. The City of Grenada appeals from the Grenada County Circuit Court's judgment affirming the findings of the Mississippi Department of Employment Security Board of Review (Board of Review) that a terminated police officer was entitled to unemployment benefits. The Board of Review found that Stefan Sanders failed a fitness-for-duty exam due to psychological problems and that the City of Grenada had acted reasonably by discharging

Sanders. But because Sanders's mental condition was outside his control, the Board of Review found that he was entitled to receive unemployment compensation.

¶2. We find that the Board of Review's decision that Sanders is entitled to unemployment benefits is supported by substantial evidence, and we affirm the circuit court's judgment affirming the Board of Review's decision.

## FACTS AND PROCEDURAL HISTORY

¶3. Stefan Sanders began working for the Grenada Police Department as a police officer in January 2015. In February 2019, while off duty, Sanders placed a 911 call asking that fellow police officers come to his residence. Grenada officers responded to his home and found Sanders in the presence of a young woman. Sanders said that he and the young woman had been seeing each other "for a few months."

¶4. Sanders told the officers that the young woman had recently suffered a stroke and that when she awoke from the stroke, she had been "gifted" with extraordinary powers including the ability to do mass calculations in her head. Sanders told the officers that her extraordinary powers had attracted the attention of government agents who had placed a probe in the back of her head. Sanders said he believed the government was going to cause the woman to disappear because she was worth a lot of money. Sanders said he called the officers because he did not want to be blamed for her disappearance.

¶5. Following the incident, Sanders was placed on administrative leave until he could undergo a psychological examination to determine whether he was fit for duty. Sanders consented to an examination, which was performed by Dr. Wayne Lancaster. Dr. Lancaster's

2

report revealed that Sanders was suffering from delusion disorder, and he recommended medication and therapy. The report also indicated that Sanders's condition posed a risk to his duties as a front-line police officer.

¶6. Sanders was provided a copy of the report and was given the opportunity to rebut it with a second opinion. Sanders did not believe that he needed further medical evaluation or that he had done anything wrong or illegal. Sanders did not provide a medical rebuttal to the report. Sanders provided his own written statement as a rebuttal, which included allegations of wrongdoing by the police chief. Sanders's statement was sent to the attorney general's office, which reportedly investigated and closed the matter.

¶7. Sanders was terminated from his employment on August 15, 2019. Sanders subsequently filed for unemployment benefits, which were denied. He appealed to the ALJ. The ALJ affirmed the denial of benefits, relying on this Court's decision in *City of Clarksdale v. Mississippi Employment Security Commission*, 699 So. 2d 578 (Miss. 1997).

¶8. Specifically, the ALJ determined that Sanders had the ability to meet fitness standards within his control by seeking a second opinion but that he had chose not to do so. According to the ALJ, Sanders's actions "show[ed] willful disregard of his obligations" to the City of Grenada.

¶9. Sanders appealed the ALJ's decision to the Board of Review, which reversed the ALJ's decision and issued the following decision:

> Separation occurred because of concerns about the claimant's mental health. Such is outside the control of the claimant and is not considered misconduct connected with work. Therefore, if otherwise eligible, the claimant is entitled to receipt of benefits. The employer is reimbursable and so is not entitled to a

non-charge in any circumstances. While the Board does not dispute the reasonableness of the employer's actions, the claimant is entitled to benefits as the cause of separation was outside his control, and there is no provision under the law to non-charge the employer.

¶10. The City of Grenada appealed to the circuit court. The circuit court affirmed the Board of Review's decision, finding no reason to disturb it under the applicable standard of review and the facts. The circuit court noted that the City of Grenada had argued for the first time on appeal that Sanders should be disqualified for misconduct because he did not follow Dr. Lancaster's advice to seek medical treatment. But the circuit court declined to consider that reason since the City of Grenada did not cite Sanders's failure to seek medical treatment as a reason for his discharge.

¶11. The City of Grenada appeals to this Court, arguing that the ALJ rightly relied on this Court's decision in *City of Clarksdale*, which held that a police office's failure to pass a physical-fitness test in order to obtain certification as required by statute, constituted misconduct as a matter of law. *City of Clarksdale*, 699 So. 2d at 583. The City of Grenada maintains that the same outcome is required here, and the circuit court erred by not reversing the decision of the Board of Appeals and reinstating the ALJ's decision.

**STANDARD OF REVIEW**

¶12. This appeal is governed by Mississippi Code Section 71-5-531 (Supp. 2020). It provides that "[i]n any judicial proceedings under this section, the findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Huckabee v. Miss. Emp.*

4

*Sec. Comm'n*, 735 So. 2d 390, 393 (Miss. 1999) (quoting Miss. Code Ann. § 71-5-531 (Supp. 1998)).

¶13. A person is disqualified from receiving unemployment benefits if the person "was discharged for misconduct connected with his work, if so found by the department." Miss. Code Ann. § 71-5-513(A)(1)(b) (Supp. 2020).

¶14. In *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982), this Court defined misconduct connected with work as follows:

> conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent[,] or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, [come] within the term.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) (citing *Boynton Cab Co. v. Neubeck*, 296 N.W. 636 (Wis. 1941) (addressing the meaning of the term under a similar unemployment compensation statute)).

¶15. *Wheeler* further provided that

> Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Id.* (citing *Neubeck*, 296 N.W. 636)).

¶16. This Court has also said that the underlying purpose of Mississippi's employment security law "is to protect those workers not permitted to continue employment through no fault of their own." *Broome v. Miss. Emp. Sec. Comm'n*, 921 So. 2d 334, 337 (Miss. 2006)

5

(internal quotation mark omitted) (quoting *Allen v. Miss. Emp. Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994)). Also, "[t]he employer bears the burden of proving misconduct by substantial, clear, and convincing evidence." *Jackson Cnty. Bd. of Supervisors v. Miss. Emp. Sec. Comm'n*, 129 So. 3d 178, 183 (Miss. 2013) (citing Miss. Code Ann. § 71-5-513(A)(1)(c) (Rev. 2011)).

## DISCUSSION

¶17. Mississippi Code Section 45-6-11(3) (Rev. 2011) requires the certification of all law-enforcement officers. In order to achieve such certification, it is necessary to meet the requisite physical and mental standards set for law-enforcement officers. Miss. Code Ann. § 45-6-11(4) (Rev. 2015).

¶18. In *City of Clarksdale*, the claimant was terminated from his employment as a police officer after he failed on three separate occasions to reach the minimum physical-training standards required by the training academy to become certified as a police officer. *City of Clarksdale*, 699 So. 2d at 579. In applying for unemployment benefits, the claimant had claimed he was terminated because he did not complete his academy training and failed to do so because he "got hurt." *Id.* (internal quotation marks omitted). After interviewing the claimant and the City of Clarksdale's personnel director, the Mississippi Employment Security Commission's program specialist did not recommend disqualification, and the claimant was granted unemployment benefits. *Id.* The City of Clarksdale appealed the initial determination, and a fact-finding hearing was conducted by an appeals referee of the Commission. *Id.*

6

¶19. The City of Clarksdale appeared at the hearing and presented witnesses. The claimant in *City of Clarksdale* neither appeared nor provided testimony at the hearing, nor was any direct evidence presented in the claimant's behalf at the hearing. *Id.* Witnesses appearing on behalf of the City of Clarksdale testified that the claimant displayed a lack of interest throughout his training and made little effort to perform to the best of his physical ability. *Id.* at 580. The claimant refused to participate in extra conditioning sessions with other participants who were attending the academy. *Id.* The fitness instructor said he never witnessed the claimant do any extra work to improve his physical condition. *Id.* The claimant at one point did complain of knee problems and presented a medical excuse from a doctor on the grounds of "knee strain—tendinitis." *Id.* (internal quotation marks omitted). The medical excuse, however, released him to return to regular duties ten days later. *Id.* Because of his knee problems, the academy excused him from the final physical test, and the claimant was allowed to return home, but he was required to retake the test within sixty days. *Id.* A month later, the claimant returned to take the make-up physical-fitness test, and he failed to achieve a passing score. *Id.* The claimant was given two more opportunities to pass the test, and he failed both times. *Id.*

¶20. Despite this evidence, the appeals referee found that the City of Clarksdale had not established misconduct. *Id.* at 579. On appeal, the Board of Review adopted the referee's opinion and affirmed the decision. *Id.* The circuit court affirmed the Board of Review's decision. *Id.*

¶21. This Court, however, reversed and rendered in favor of the City of Clarksdale, holding as follows:

> [The claimant] was in control of whether or not he met the statutory requirement. He could have worked harder or trained more. Rather, he was content to do the minimum knowing that his employment was contingent upon him passing the physical fitness test. Thus, we hold that where an employee is barred from employment because he did not meet a statutory requirement as result of his own act, then the employee cannot receive unemployment benefits.

*Id.* at 583.

¶22. *City of Clarksdale* also closed with the following:

> Whether [the claimant] passed the physical fitness test was within his control and thus, his failure was misconduct as a matter of law. The legislature should consider revisiting this law to determine if additional reasons should be added to relieve an employer of unemployment benefits. Employer's [sic] should not be responsible for unemployment benefits to individuals that were dismissed for failure to qualify for a position where the qualification is required by law. According to our decisions in *Wheeler* and *Richardson* [*v. Miss. Emp. Sec. Comm'n*, 593 So. 2d 31 (Miss. 1992)], [the claimant's] actions constituted misconduct.

*Id.*

¶23. The City of Grenada contends that the same result is required here. According to the City of Grenada, because it is undisputed that Sanders is unfit for duty following a psychological examination and because Sanders failed to rebut the examination's findings, his situation constitutes misconduct as a matter of law, and he is not entitled to unemployment benefits.

¶24. The City of Grenada further contends that "*City of Clarksdale*'s interpretation is confirmed by 20-plus years of legislative inaction." The City of Grenada submits that based

8

on what the *City of Clarksdale* Court wrote at the end of its opinion, "if the Legislature wanted benefits to be awarded under such circumstances, then it needed to amend the statute." But "[g]iven that the Legislature has never seen fit to do so in the many years since *City of Clarksdale* was decided, it can be presumed that [this Court's] interpretation has achieved legislative approval."

¶25. First, that is not how we read *City of Clarksdale*'s suggestion to the Legislature. Earlier in the opinion, the *City of Clarksdale* Court stated as follows:

> [T]he question before this Court is whether or not the Commission correctly applied the law in this case—did [the claimant's] actions constitute misconduct as a matter of law? We find that they did constitute misconduct—not misconduct in the normal use of the word, but according to the statutory requirements of employment in this case.

*City of Clarksdale*, 699 So. 2d at 581.

¶26. *City of Clarksdale* then suggested that the Legislature expand or augment the definition of misconduct.

> The legislature should consider revisiting this law to determine if additional reasons should be added to relieve an employer of unemployment benefits. Employer's [sic] should not be responsible for unemployment benefits to individuals that were dismissed for failure to qualify for a position where the qualification is required by law.

*City of Clarksdale*, 699 So. 2d at 583.

¶27. But the Legislature has not seen fit to do so. To date, this Court's definition of the term "misconduct" as used in the unemployment-compensation statute remains the same. *See Wheeler*, 408 So. 2d at 1383.

9

¶28. Here, the fact—alone—that Sanders has been diagnosed with a mental disorder that makes him mentally unfit for duty as a police officer does not constitute misconduct on his part under this Court's longstanding definition of the term. Nor does the fact that Sanders failed to obtain a second opinion to rebut his mental diagnosis.

¶29. As we read the record, the City of Grenada discharged Sanders from the Grenada Police Department because he was diagnosed with a mental disorder that rendered him unfit for duty as a front-line police officer. Nowhere does the record indicate or suggest that the City of Grenada's decision would have been different had Sanders obtained a second opinion confirming Dr. Lancaster's diagnosis.

¶30. No evidence was presented that refutes the Board of Review's finding that Sanders's mental condition is the result of anything other than circumstances outside Sanders's control. And while Dr. Lancaster had recommended that Sanders's condition be treated with medication and therapy, the City of Grenada did not terminate Sanders for failure to seek treatment. Rather, as the circuit court noted, the City of Grenada terminated Sanders's employment solely on the basis of Sanders's being diagnosed with a mental disorder that made him unfit to be a front-line police officer.

¶31. As the law has stood since before *City of Clarksdale* and after, the underlying purpose of Mississippi's employment-security law "is to protect those workers not permitted to continue employment through no fault of their own." *Broome*, 921 So. 2d at 337 (internal quotation mark omitted) (quoting *Allen*, 639 So. 2d at 906)). As the Board of Review concluded based on the evidence presented, that is the case here.

10

## CONCLUSION

¶32.    For these reasons, we affirm the circuit court's judgment affirming the Board of

Review's decision to grant unemployment benefits to Sanders.

¶33.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**